Magdalen Friend, Appellant, v. Northern Trust Company, Executor of Estate of Emanuel Friend, Deceased, et al., Appellees.

Gen. No. 42,011.

Heard in the third division of this court for the first district at the October term, 1941. ■■■■■■ Opinion filed May 27, 1942.

FLOYD LANHAM and ARTHUR R. HALL, both of Chicago, for appellant.

D'ANCONA, PFLAUM, WYATT, MARWICK & RISKIND and WINSTON, STRAWN & SHAW, all of Chicago, for appellees; A. J. PFLAUM and JOHN D. BLACK, both of Chicago, of counsel.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

On May 18, 1917 an antenuptial agreement was executed at Chicago between Emanuel Friend, a physician and surgeon of that city, and Magdalen Jane Alexander, whereby the latter purported to waive any and all rights in the estate of her intended husband for the sum of $5,000 in the event the parties should separate prior to the husband's death, and the sum of $25,000 in the event they continued to live together until his death. The parties were married at Chicago

on May 26, 1917. At that time she was 24 years and he was 49 years of age. She received her education in a convent in the State of Iowa. After completing her education and prior to her marriage to Dr. Friend, she gave lessons in speaking and taught art and elocution in Chicago. On December 8, 1933, Dr. Friend filed , a bill for divorce in the superior court of Cook county. The bill alleged that on October 27, 1932, Magdalen Friend wilfully deserted and abandoned him for the space of one year and upwards. Magdalen Friend, answering, admitted the marriage, but denied she had deserted him. On December 13, 1933, the superior court of Cook county entered a decree finding that on October 27, 1932, Magdalen Friend wilfully deserted and abandoned Emanuel Friend without any reasonable cause therefor, and that she persisted in such desertion for the space of one year and upwards prior to the filing of the bill of complaint. The decree dissolved the marriage between the parties, and found that pursuant to an agreement the antenuptial contract of May 18, 1917, was terminated. Emanuel Friend was ordered to pay Magdalen Friend the sum of $25,000 in full and complete settlement and adjustment of all her rights in the property of the complainant, and of all claims and demands for alimony and support. Emanuel Friend was also ordered to pay Magdalen Friend for her solicitors' fees and costs the sum of $5,100, and to deliver to her one LaSalle automobile. The court further decreed that all the right, title, claim or interest of Magdalen Friend in any property then owned by him, or thereafter acquired by him by way of jointure, homestead, dower or otherwise be forever terminated and barred. The payment of the amounts awarded was made in open court when the decree was entered. No appeal was prosecuted from the decree of divorce entered on December 13, 1933. No children were born to or adopted by Emanuel and Magdalen Friend. On November 8, 1935, Magdalen

Friend married George H. J. Langskov at Laguna Beach, California. Dr. Friend died at Chicago on July 19, 1938. On September 7, 1938, his last will and testament was admitted to probate by the probate court of Cook county, and the Northern Trust Company qualified as executor. On September 5, 1939, a complaint under the name of Magdalen Friend was filed in the circuit court of Cook county, naming the Northern Trust Company executor, and others, as defendants. Defendants answered and the case was heard before the chancellor in a trial lasting more than seven weeks. In the taking of depositions and in open court, plaintiff called 24 witnesses and defendants called 40 witnesses. The chancellor gave an opinion which carefully reviewed the testimony of the witnesses on every feature of the case, and analyzed the law relating to the facts as found by him. He entered a decree finding against the contentions of plaintiff and dismissed her complaint for want of equity. This appeal followed.

Plaintiff's theory is that the divorce decree entered on December 13, 1933, is void because (1) a separate maintenance proceeding was pending between the parties thereto for 63 days of the time relied upon by defendant's testate, as the 12 months statutory period of wilful desertion; (2) the defendant therein at the time the divorce decree was entered and for some years prior and subsequent thereto, was an insane person, wholly incapable of transacting business in her own interest; and (3) the defendant therein was an insane person, wholly incapable of transacting business in her own interest during the entire time relied upon as the 12 months period of desertion, wherefore she was incapable of committing wilful desertion. Plaintiff's further theory is that the antenuptial contract is void because at the time it was made an engagement to marry existed, requiring the defendant's testate to fully disclose the extent, nature and charac-

ter of his wealth; that the sum provided to be paid to the wife was grossly disproportionate to what she was entitled to receive, and its procurement constituted a fraud; that since the divorce decree is void for either of the reasons asserted, it may be attacked at any time, either in a direct or a collateral proceeding, and that the court should have declared such decree to be a nullity and void. The theory of the defendants is that (1) plaintiff's case is without foundation either in fact, in equity, in conscience or in morals; that plaintiff has come into equity without clean hands and cannot recover; (2) that plaintiff is and always has been sane and bound by all her acts and doings, and that the evidence abundantly proves this; (3) that the divorce to Emanuel Friend was granted by a court of competent jurisdiction after a full trial at which both parties were present in person and by their respective solicitors, is valid, never appealed from, and is not subject to collateral attack; (4) that the antenuptial agreement made between Emanuel Friend and Magdalen Friend was a valid agreement, entered into knowingly by plaintiff; that the plaintiff waived and relinquished all rights under it at the time of her divorce by the acceptance of the decree of divorce and the amount awarded her thereby, and of the benefits of the divorce, and that said agreement and the plaintiff's rights thereunder have been terminated; (5) that plaintiff, according to the allegations of her complaint, having regained her sanity on or about January 15, 1939, learned at some time between January 15, 1939 and July 10, 1939 of the death of Emanuel Friend, and notwithstanding this knowledge continued to live and cohabit with George H. J. Langskov for some time after July 10, 1939, and until before the filing of the complaint, and is estopped to maintain this action and is guilty of *laches* in not earlier bringing this action; (6) that plaintiff is estopped by the acceptance of the benefits of the divorce decree, and all her subsequent

conduct to maintain the action; (7) that plaintiff comprehended and understood all her acts and doings and understood that the decree of divorce had been entered and that all property matters between her and Emanuel Friend had been adjusted, determined, comprehended; that she understood that she was married to George H. J. Langskov; (8) that this case is from its inception a fraud on the court and without merit in equity, conscience or fact; and (9) that the overwhelming weight of the evidence sustains the decree of the trial court which found that the plaintiff was and is sane; that the decree obtained by Emanuel Friend from her was valid, that her subsequent marriage to Langskov was valid, and that there is no equity in her case.

The first criticism leveled at the instant decree is that the chancellor should have found that the decree of divorce entered December 13, 1933, finding Magdalen guilty of wilful desertion, was and is a void decree; that such decree being void for lack of jurisdiction of the court to enter it, may be attacked at any time in any manner and by any person affected thereby; and that the lack of jurisdiction of the court to enter the decree can be shown from the record itself or by facts outside the record. Defendants answer the criticism by asserting that the decree of divorce entered by the superior court is a valid and subsisting decree; that the superior court has jurisdiction in divorce cases; that the decree was not appealed from and is not subject to collateral attack; and that the decree is not subject to attack in this proceeding, which is in the nature of a bill to review a decree entered by a court of competent jurisdiction. On August 25, 1933, Magdalen Friend filed a bill for separate maintenance in the superior court of Cook county against Emanuel Friend. On September 12, 1933, Emanuel answered, and on September 30, 1933, Magdalen filed a replication. Two hearings were had on

the separate maintenance complaint during the months of October and November 1933. On December 8, 1933, Emanuel Friend filed a bill for divorce in the superior court in which he charged his wife with desertion from October 27, 1932, to and including October 27, 1933. On the day the bill for divorce was filed, Magdalen filed an answer denying that she had deserted him. The divorce complaint came on for hearing on December 13, 1933, and a decree of divorce was entered. The ground for allowing the divorce was that on October 27, 1932, Magdalen wilfully deserted and abandoned Emanuel without any reasonable cause, and persisted in such desertion for a space of one year and upwards prior to the filing of the bill of complaint. On the day the decree for divorce was entered, namely, December 13, 1933, there was filed in the separate maintenance proceeding a stipulation that such case might be dismissed, and upon the stipulation an order was entered by the same chancellor who heard the divorce case dismissing the separate maintenance case. The certificate of evidence in the divorce case shows that at the time the chancellor was about to sign the divorce decree, he was confronted with the fact that the separate maintenance case was pending before him. The period of desertion as alleged in the bill of divorce and upon which the decree was entered, was from October 27, 1932 to October 27, 1933, but included in this period of time is that period from August 25, 1933 to October 27, 1933, when the separate maintenance complaint of Magdalen was pending. Plaintiff cites *Floberg v. Floberg,* 358 Ill. 626, as authority for the proposition that there can be no wilful desertion during the period when the wife is prosecuting a suit for separate maintenance. In the *Floberg* case, the Supreme Court said:

"Such living separate and apart does not constitute willful desertion without reasonable cause within the meaning of the Divorce act. It would be incompatible with a pending suit for the dissolution or modification

of the marriage contract for the parties to live together. If the suit is carried on *bona fide,* it is not incumbent, during its pendency, upon either party to resume the marital status. The time so consumed by the litigation cannot be reckoned in the calculation of the statutory period of desertion. The rule applies alike to pending proceedings for separate maintenance under the statute and for divorce. It is 'time out.' ''

The question of what shall constitute grounds for granting a divorce, or whether the marriage contract shall be dissolved under any circumstances or for any cause, is one of public policy and belongs to the legislative and not the judicial department of our government. (*Embree v. Embree,* 53 Ill. 394.) Section 5, ch. 40, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 109.172], provides that ''the Superior Court of Cook County shall have jurisdiction in cases of divorce and alimony allowed by this act.'' Section 1, ch. 40, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 109.169], empowers the court to grant a divorce where a spouse has ''wilfully deserted or absented himself or herself from the husband or wife without any reasonable cause for the space of one year.'' The bill for divorce properly alleged that Magdalen had wilfully deserted and absented herself from Emanuel for the space of one year and upwards. Hence, on the face of the bill the court had jurisdiction of the subject matter. It has been well said that there is perhaps, no word or legal terminology so frequently used as the word ''jurisdiction,'' so capable of use in a general and vague sense, and which is used so often by men learned in the law without a due regard to precision in its application. (*Watson v. Jones,* 13 Wall. (U. S.) 679, 732.) In *O'Brien v. People ex rel. Kellogg Switchboard & Supply Co.,* 216 Ill. 354, our Supreme Court said at page 363:

''Jurisdiction is the power to hear and determine the subject matter in controversy between the parties to a suit. If the law confers the power to render a

judgment or decree, then the court has jurisdiction. . . . Jurisdiction of the particular matter does not mean simple jurisdiction of the particular case then occupying the attention of the court, but jurisdiction of the class of cases to which the particular case belongs. . . . Jurisdiction does not depend upon the rightfulness of the decision. It is not lost because of an erroneous decision, however erroneous that decision may be.'' In our opinion the rule laid down in *Ullrich v. Ullrich*, 299 Ill. App. 460, is applicable to the instant case. On March 6, 1935, Mrs. Ullrich filed her bill for separate maintenance, and one year and three days later on March 9, 1936, her husband filed a cross bill for divorce. Answers were filed to the bill and cross bill. On October 9, 1936, Mrs. Ullrich filed an amended complaint, amending her bill for separate maintenance to a bill for divorce, charging cruelty. On October 20, 1936, her husband answered this amended bill, and on December 2, 1936, by leave of court, Mrs. Ullrich again amended her complaint and charged desertion. The answer of the defendant to the first amended bill (charging cruelty) was ordered to stand as the answer to the complaint of December 2, 1936. On December 16, 1936, the case was heard, both parties being represented by counsel, and a decree for divorce on the ground of desertion was awarded to Mrs. Ullrich. Neither party appealed. On December 14, 1937, a year after the decree was entered, Mr. Ullrich filed a complaint in the nature of a bill of review and sought to have the divorce decree annulled for error of law apparent on the face of the decree, namely that his desertion as the legal ground for the decree had been suspended during the period while the separate maintenance complaint was pending. The chancellor sustained Mrs. Ullrich's motion to strike and dismissed the complaint. Mr. Ullrich appealed and we affirmed the order dismissing the decree. We said at page 463:

"The error urged by plaintiff is that the decree was granted for wilful desertion and that it is apparent the court erroneously included in the period of one year of wilful desertion, as required by statute, the time in which a bill of complaint by Mrs. Ullrich against her husband for separate maintenance was pending. Such computation was held erroneous by the Supreme Court in *Floberg v. Floberg*, 358 Ill. 626, followed by this court in *In re Estate of Schriver*, 289 Ill. App. 581. In each of these cases, however, the decree was challenged by direct appeal where the court in its consideration of the decree was untrammelled by rules applicable to petitions for review for error apparent on the face of the decree by which we are bound. Courts are reluctant to subject decrees in equity to review by bills of this nature, and the cases are comparatively few in which such relief has been allowed. In particular, this reluctance exists in regard to decrees for divorce and for obvious reasons." We are of the opinion that the case of *People v. Prystalski*, 358 Ill. 198, while not a divorce case, serves to illustrate the principle involved. The Supreme Court said at page 206:

"Jurisdiction of a court to hear and determine a cause does not depend upon actual facts alleged but upon authority to determine the existence or non-existence of such facts and render judgment according to such finding." The transcript of the proceedings at the divorce trial shows that the parties were present in open court in person and by their counsel; that Emanuel and two witnesses testified that Magdalen left him on October 17, 1932, which was more than one year before the filing of the bill for divorce and that after plaintiff's evidence was heard, Magdalen's counsel stated that she offered no evidence. The court, however, examined Magdalen and in response to questions she answered that she understood she was to receive a lump sum of $25,000 in full settlement of her

dower and any other interest she might have in Emanuel's property; that she was also to receive $5,100 in full of her solicitor's fees and all other expenses, and a LaSalle automobile; that in accepting these amounts a certain antenuptial contract between her and Emanuel was waived and released, and that in accepting all these conditions she was forever barred from and waived and relinquished all right to homestead and dower or any other rights she might have in her husband's property, and that she could not ask for any further payments. The court also asked Magdalen's counsel whether he wished to ask her any questions and he stated he did not, whereupon the court stated that he desired to have the parties sign the decree. The decree was signed by the parties and entered. On the day the decree was entered, Magdalen also signed a release of errors. We are convinced that the superior court had jurisdiction to hear the divorce case and to grant the decree on the ground of wilful desertion for a period of one year. The bill charged wilful desertion and the witnesses testified in support of the charge. The fact that the court erroneously counted time did not deprive it of jurisdiction to hear and determine the case. As the Supreme Court said in the *O'Brien* case, jurisdiction does not depend upon the rightfulness of the decision and is not lost because of an erroneous decision, however erroneous that decision may be.

Plaintiff insists that the decree is manifestly and palpably against the weight of the evidence; that she was an insane person on December 13, 1933 and had been so for a long period prior thereto, and no valid decree of divorce could be entered against her on a charge of wilful desertion; that the actions of Emanuel Friend in connection with the entry of the divorce decree constituted a fraud upon the court, rendering the decree invalid; that the decree being invalid may be attacked at any time and in any manner and by any

person affected thereby; and that plaintiff's actions subsequent to the entry of the divorce decree do not estop her from now attacking such decree as being void. Defendants meet these contentions by asserting that the instant decree is supported by the overwhelming weight of the evidence; that any other decree would have been contrary to the overwhelming weight of the evidence, to equity and to good conscience; that plaintiff was and is a sane person of sufficient mental capacity to understand and comprehend all her acts and doings; that there is no basis for the contention that Emanuel Friend imposed a fraud upon the court; that the actions of plaintiff subsequent to the entry of the decree of divorce estop her from attacking such decree; that her actions also show that she is barred by *laches,* and that the decree of divorce is valid and not subject to collateral attack. Plaintiff alleged that she became and was insane on or about February 15, 1930, and so remained until on or about January 15, 1939. The evidence offered in support of this proposition consisted of the testimony of all of the persons closely associated with her and taken from every station in life, her nurses, her doctors, her companions and her associates, and covered the period of her early ailments from 1930 to shortly before the filing of the instant complaint. The three physicians testifying for plaintiff as experts upon a hypothetical question, expressed the opinion that at the time of the entry of the divorce decree, and prior and subsequent thereto, plaintiff was insane. Three physicians testifying for defendants as experts, upon the same hypothetical question, expressed the opinion that at the time of the entry of the divorce decree and prior and subsequent thereto plaintiff was a sane person. The evidence was conflicting in many respects. Plaintiff maintains that her witnesses had much closer and more intimate knowledge of her condition than those testifying for defendant. In the opinion filed by the chancellor in

the instant case he called attention to the fact that plaintiff did not testify. He remarked that while she had the right to refrain from taking the stand, there was "a great deal of evidence that could have been refuted by her, if she so desired. She was within one block of this court during the trial of this case, which lasted seven weeks, and at no time did she appear in court." A discussion of the evidence of the respective witnesses would expand this opinion into a volume. We have carefully read the abstracts and briefs and concur in the finding of the chancellor that the evidence does not sustain her allegations of insanity. We also agree that the evidence does not establish that the actions of Emanuel Friend in connection with the entry of the divorce decree constituted a fraud upon the court. The contention of plaintiff that the decree is manifestly and palpably against the weight of the evidence is without merit.

Plaintiff urges that the antenuptial contract made May 18, 1917, was void. We are of the opinion that our discussion of the other points disposes of this point. The evidence clearly shows that at the time the divorce decree was entered plaintiff knowingly waived and relinquished all her rights under the antenuptial agreement. The divorce decree found that the parties had agreed that the antenuptial agreement should be canceled and rescinded and thereafter be of no further force or effect, and the court decreed that the agreement was terminated and no longer binding upon either of the parties, and that all right, title, claim or interest of Magdalen in any and all property of Emanuel was forever terminated and barred. We have held that the evidence shows that Magdalen Friend was sane and that the divorce chancellor had jurisdiction to enter the decree of divorce. We have also held that the evidence shows that no fraud was committed on the court. It is unnecessary for us to discuss the proposition as to whether the antenuptial contract was

void. We find that the decree in the divorce case is binding on Magdalen Friend and that the provision in such decree terminating the antenuptial contract and waiving and relinquishing all her rights therein, is binding.

Plaintiff states that her actions subsequent to the entry of the decree of divorce do not estop her from now attacking the decree as being void. The checks in payment of the $25,000 award to plaintiff and the $5,100 award for her solicitors' fees and other expenses, were delivered to her in open court. She indorsed the checks and they were paid. No tender of repayment of the checks to Emanuel Friend or to his estate has ever been made, nor has the failure to do so been adequately explained. She married George H. J. Langskov on November 8, 1935. There is competent evidence in the record to show that Langskov and plaintiff cohabited together as husband and wife from the time of their marriage up to the time of the trial. We have held that the evidence shows that during all this time she was sane, and responsible for her acts. We are satisfied that her actions subsequent to the entry of the divorce decree estop her from challenging that decree. Finally, plaintiff contends that the court erred in striking from the record the testimony of H. Clay Calhoun, the notary who acknowledged the antenuptial contract, and in admitting the testimony of Edward C. Higgins, an attorney who appeared for her in the divorce case. In view of our holding that at the time the divorce decree was entered the antenuptial contract was abrogated, it is unnecessary for us to pass on the admissibility of the proffered testimony of Mr. Calhoun. Plaintiff states that Edward C. Higgins, a lawyer and associate of Mrs. Friend's attorney in the separate maintenance and divorce cases, was permitted over objection to testify in detail as to his conversations with her regarding her cause of action against Dr. Friend, her financial condition and

physical condition, and from these conversations and others he said that in his opinion she was sane. Mr. Higgins was called as a witness for the defendant and testified that he appeared for plaintiff in court before the divorce chancellor on two different occasions, stated his recollection of the testimony given by his client in open court, and that from what he saw of her actions and conversations it was his opinion that she was sane. We agree with defendants that there is no ground for any proper objection to the testimony of Mr. Higgins which so far as it related to the conduct of Magdalen had, to do only with her conduct in open court during the hearing of a case.

For the reasons stated, the decree of the superior court of Cook county is affirmed.

*Decree affirmed.*

HEBEL and KILEY, JJ., concur.