**Helen HARRIS, Appellant,**

v.

**Guy H. HARRIS, Appellee.**

**Yvonne H. PARKS, Appellant,**

v.

**Norman E. PARKS, Appellee.**

**Nos. 22266, 22705.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 18, 1969.

Decided Jan. 14, 1970.

Petition for Rehearing Denied Feb. 12, 1970.

Mrs. Patricia M. Wald, Washington, D. C., for appellants. Messrs. Joseph F. Dugan and Peter S. Smith, Washington, D. C., were on the brief for appellant in No. 22266. Mr. David S. Raycroft was on the brief for appellant in No. 22705. Mr. Peter S. Smith, Washington, D. C., also entered an appearance for appellant in No. 22705.

Mr. Walter W. Johnson, Jr., Washington, D. C. (appointed by this court), as *amicus curiae.*

Mr. John D. Hawke, Jr., Washington, D. C., filed a brief on behalf of American Civil Liberties Union Fund as *amicus curiae* in No. 22266.

Before McGOWAN, ROBINSON and MacKINNON, Circuit Judges.

MacKINNON, Circuit Judge:

Both appellants in this consolidated appeal petitioned *in forma pauperis* under D.C.Code § 15–712[1] to be relieved from the payment of costs with respect to their actions for absolute divorce on the grounds of "voluntary separation from bed and board for one year without cohabitation * * *." D.C.Code § 16–904(a).[2] Each petition *in forma pauperis* was denied by the Domestic Relations Branch of the Court of General Sessions and such decisions were affirmed by the District of Columbia Court of Appeals. The Circuit Court has jurisdiction under D.C.Code § 11–321 (1967) pursuant to which we granted discretionary review.

I

Appellant Yvonne Parks was married early in 1961, separated the same year, and has lived separate and apart without cohabitation for what is now in excess of eight years. In her affidavit of indigency she states in effect that she and her five dependent children are living on

---

1. When satisfactory evidence is presented to the District of Columbia Court of General Sessions or one of the judges thereof that the plaintiff in a suit is indigent and unable to make deposit of costs, the court or judge may permit the prosecution of the suit without the prepayment or deposit of costs. D.C.Code § 15–712 (1967).

2. A divorce from the bond of marriage or a legal separation from bed and board may be granted for adultery, actual or constructive desertion for one year, voluntary separation from bed and board for one year without cohabitation, or final conviction of a felony and sentence for not less than two years to a penal institution which is served in whole or in part. A legal separation from bed and board also may be granted for cruelty. D.C.Code § 16–904(a) (1967) (79 Stat. 889.)

Congress first provided in 1965 that "voluntary separation from bed and board for one year without cohabitation" was a valid ground for divorce. The prior statute contained a "five year" requirement. Act of Dec. 23, 1963, Pub. L. No. 88–241, § 16–904(3), 77 Stat. 560.

$220 per month ($36.66 per person) received from the Department of Public Welfare.[3] Notwithstanding her affidavit of indigency, the Domestic Relations Branch without a written opinion ordered that she be "not permitted to bring said proceeding to conclusion without prepayment of fees or costs or security therefor." A motion for *en banc* consideration by the District of Columbia Court of Appeals was denied.

## II

Helen Harris was married in 1952 and has been separated since 1955. In support of her petition that she be allowed to proceed *in forma pauperis* she filed an affidavit alleging her belief in the merits of her claim for divorce; that she had been separated from her husband for over fourteen years; that because of her poverty she was unable to pay the costs of the divorce proceeding or to give security therefor and generally alleged her inability to pay the costs of the divorce action and still support her family.[4]

In denying her right to proceed *in forma pauperis*, the Court of General Sessions in a written opinion stated, *inter alia*, that her lack of poverty is belied by her own statement and that prosecution of her divorce claim *in forma pauperis* would involve the responsibilities of other members of the bar as well as District of Columbia taxpayers. The opinion also referred to the probability that because the defendant is a non-resident the court would be asked to appoint counsel to represent him,[5] and that this would cause the court to be faced with the inability to compensate appointed counsel. The court's memorandum stated further:

"Here the parties have created a situation by their own act. They separated voluntarily. The taxpayers of the District of Columbia did not ask these two people to get married. They did not ask them to separate. They should not be made to underwrite the legal procedures to terminate the relationship."

The court also viewed a "deeper problem" alleging that members of the bar

3. Her affidavit alleged that she was the mother of five children whom she supported on approximately $220 per month from the Department of Public Welfare. She has no other source of income. Her fixed items of expense were stated to be:

| | | |
|---|---|---|
| Rent | $ 74.00 | per month |
| Food | 80.00 | per month |
| Telephone | 8.75 | per month |
| Utilities | 9.00 | per month |
| Total | $171.75 | |

The remainder was spent for miscellaneous expenses, clothing and entertainment for her children. She has no real property, no bank account and no automobile. (Her total welfare payments have recently been increased to $229 per month.)

4. Her affidavit in this respect stated in effect:

That her family consists of two children of which she is the sole support; that her sole source of income is $70 per week take home pay from private employment (this would approximate $300 per month); that she has no savings account, no checking account, does not own any real property nor an auto-

mobile; and does not have sufficient money or property with which to pay the costs of the divorce action and still be able to provide her family with the necessities of life. That she owes the following bills and expenses and must make the indicated monthly payments thereon:

| | | |
|---|---|---|
| Rent | $111.00 | monthly |
| 250.00 (debt) | 17.00 | per month |
| 150.00 (debt) | 5.00 | per month |
| 130.00 (debt) | 9.00 | per month |
| 50.00 (debt) | 10.00 | per month |
| 40.00 (debt) | 10.00 | per month |
| Telephone | 7.00 | per month |
| Food | 100.00 | per month |
| Medical | 5.00 | per month |
| Clothing | 10.00 | per month |
| Miscellaneous | 15.00 | per month |
| Total | $299.00 | |

Her affidavit indicated that she had debts totaling $620 upon which she was required to pay $51 per month. Thus, the living expenses of the three totaled $249 and averaged $83 per person per month. Exclusive of rent, the per capita living expenses were $46 per month, about $1.50 per day.

5. See note 8, *infra*.

were deviating from their proper role as counsel in matrimonial disputes and instead of attempting to reconcile families were stirring up matrimonial litigation. Reference was made to the fact that the Legal Aid Society has consistently refused to ask for leave to proceed *in forma pauperis* in other than support and custody matters, and asserted that it was demeaning to the legal profession to attempt to break up the family and to stir up litigation for that purpose. Such conduct, the court noted, was contrary to public policy which encourages the preservation of the institution of marriage and the permanency of the family relationship. Finally it concluded that because of the foregoing and other reasons it would "not exercise its discretion to allow this *or similar* [*divorce*] *cases* to be brought *in forma pauperis*" and that it would not allow the appeal to proceed *in forma pauperis*. (Emphasis added).

## III

There is no question that Mrs. Parks is, in fact, indigent and unable to make deposit of costs. Mrs. Harris' case is more marginal and merits further comment. One of the reasons given by the lower court in denying Mrs. Harris' petition to proceed *in forma pauperis* was that "Her allegation of poverty is belied by her own statement." Assuming for the moment that this was the sole reason for denying appellant's petition, we feel that such summary denial was improper under these facts.

The test to be applied here is that laid down in Adkins v. E. I. Dupont de Nemours & Co., 335 U.S. 331, 69 S.Ct. 85, 93 L.Ed. 43, 11 A.L.R.2d 599 (1948),

where Mr. Justice Black, delivering the opinion of the Court with respect to the federal *in forma pauperis* statute [6] stated:

"We cannot agree with the court below that one must be absolutely destitute to enjoy the benefit of the statute. We think an affidavit is sufficient which states that one cannot because of his poverty 'pay or give security for the costs * * * and still be able to provide' himself and dependents 'with the necessities of life.' " 335 U.S. at 339, 69 S.Ct. at 89.

In *Harris*, the trial judge was concerned with the $70 per week take home pay. Under the circumstances, seventy dollars per week is not, in and of itself, so substantial a figure as would disqualify a person with pressing debts and two minor children to support from proceeding *in forma pauperis*.[7] Thus under the District of Columbia Code, as under the federal statute, *in forma pauperis* relief is not limited to those who are public charges or absolutely destitute.

The present state of affairs then is that Mrs. Harris and Mrs. Parks are indigent within the meaning of D.C.Code § 15–712. Because the trial courts denied their petitions to proceed *in forma pauperis*, they had been effectively barred from proceeding with their respective divorces despite the fact that both cases in question are, under the statute, strong divorce cases with substantial periods of separation and children involved. We feel that this has been brought about by the trial court's failure to construe the applicable statutes properly.

The obvious intent of the indigency statute is to make available to

---

6. 28 U.S.C. § 1915(a) provides:

Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor. Such affidavit shall state the nature of the action, defense

or appeal and affiant's belief that he is entitled to redress.

7. Under a different set of circumstances, the question of whether or not the petitioner falls within the test of indigency as laid down in *Adkins* could be much closer. In such a case, the proper procedure would be to require a more particularized statement from the petitioner unless it is absolutely clear that petitioner does not qualify.

the indigent, in common with his fellow citizen, the full range of civil remedies contrived by court or legislature including what appear to be meritorious cases for divorce. We fully appreciate the lower court's concern that courts and lawyers should not be put in a position where it would appear that they are encouraging divorce. However, Congress has enacted a statute authorizing divorce on prescribed grounds and, where the facts indicate that a party is entitled to a divorce on the basis of one of these grounds, additional inquiries are not warranted. Despite differing views of some, there are strong sociological, humanitarian and legal reasons why divorce may be of value to society. This is the reason Congress enacted the divorce statute. It is also the reason why the *in forma pauperis* statute should be construed to permit indigents to proceed in good faith with nonfrivolous claims for divorce. There are a number of situations where the court would be perfectly justified in denying *in forma pauperis* applications in divorce cases but these are not such cases.

### IV

The *amicus curiae* appointed by the court states one of the issues here presented to be:

> In applying the *In Forma Pauperis* statute to indigent plaintiffs in divorce actions is it proper for the trial judge to give consideration to the public policy of the District of Columbia against divorce and in favor of the continuation of marriage?

If such were the full statement of the public policy applicable, no indigent plaintiff could obtain a divorce, but fortunately such is not the public policy of the District of Columbia with respect to divorce applications by indigent plaintiffs. Rather, the public policy in such matters is set forth in the two statutes enacted by Congress, *i. e.*, the divorce statute and the *in forma pauperis* act, and together these statutes authorize divorces in such situations. The public policy on such matters is for Congress and not the judicial branch of government. *See* Friend v. Northern Trust Co., 314 Ill.App. 596, 42 N.E.2d 330, 334 (1942); Grossman v. Grossman, 315 Ill. App. 345, 43 N.E.2d 216, 219 (1942). The public policy on any matter is primarily for the lawmakers and is to be ascertained by reference to the Constitution, statutes and court decisions and not from general considerations of supposed public interest. If a policy exists it may be used to resolve an uncertainty of law but it cannot override a statute. Muschany v. United States, 324 U.S. 49, 65 S.Ct. 442, 89 L.Ed. 744 (1945); Twin City Pipe Line Co. v. Harding Glass Co., 283 U.S. 353, 51 S.Ct. 476, 75 L.Ed. 1112, 83 A.L.R. 1168 (1931); Fullinwider v. Southern Pac. R. R. Co., 248 U.S. 409, 39 S.Ct. 130, 63 L.Ed. 331 (1919). Since Congress has prescribed certain statutory grounds for divorce it is beyond the authority of any court to impose additional grounds thereto. More specifically, it is not proper to use a divorce applicant's inability to pay the costs of a divorce action as a ground for denying any such person access to a fair trial with that objective since under the statute one's ability to pay the costs of a divorce action is not a condition precedent to obtaining a divorce. Congress intended that rich and poor alike should have equal right to a divorce and this was one of its objectives in enacting D. C.Code § 15–712 providing for the prosecution of all suits by indigents without prepayment or deposit of costs upon presentation of satisfactory evidence that the plaintiff is indigent and unable to make deposit of costs. The *in forma pauperis* statute does not exclude divorce actions. It would be unthinkable that Congress would, by statute, permit well-to-do persons to obtain divorces and withhold that right from indigent persons.[8] And it is

8. Any other interpretation would give rise to a very substantial constitutional question as witnessed by the fact that the

Supreme Court has noted probable jurisdiction in the case of Boddie v. Connecticut, 286 F.Supp. 968 (D.C.Conn.1968),

an abuse of discretion for trial courts to use criteria in passing on *in forma pauperis* applications that in effect set up more restrictive divorce grounds than are prescribed by statute. For instance, non-indigent applicants for divorce are not required to prove in their divorce action in addition to the statutory grounds that some *useful social reason* will be served by a severance of the marital relationship. This would be a non-statutory ground that is not applicable to non-indigent persons and cannot be imposed on indigent petitioners as an additional requirement. Compliance with the statutory grounds is all that is required.

## V

Lurking in the background is another question only slightly alluded to in the *Harris* case. D.C.Code § 16–918 requires the assignment of an attorney to represent the defendant in each uncontested divorce case [9] and Rule 5(a) [10] of the District of Columbia Court of General Sessions, Domestic Relations Branch Rules provides for payment of such fees as the court may determine to be proper, to be paid as the court may direct; and that, upon application for the assignment of an attorney, the minimum fee (which at the present time is $100) must be deposited with the application.[11] Although

---

prob. juris noted, 395 U.S. 974, 89 S.Ct. 2138, 23 L.Ed.2d 763 (1969). There the plaintiffs were effectively barred from the Connecticut courts because of prohibitive filing fees and court costs and the court decided that the law requiring indigent persons seeking divorce to pay filing fees and costs, before allowing their access to the Connecticut courts, is not a denial of a right so fundamental that the due process of the equal protection clause of the Constitution would forbid Connecticut from continuing such a system. Plaintiffs' complaint was dismissed.

9. D.C.Code § 16–918 (1967) provides:

In all uncontested divorce cases, and in any other divorce or annulment case where the court deems it necessary or proper, a disinterested attorney shall be assigned by the court to enter his appearance for the defendant and actively defend the cause. The attorney shall receive such compensation for his services as the court determines to be proper, which shall be paid by the parties as the court directs.

10. Rule 5. Assignment of Attorneys and Appointments of Guardians Ad Litem
(a) Assignment of Attorneys in Uncontested Cases.

(1) How Assigned. The assignment of an attorney to represent the defendant, as provided by D.C.Code 1967 Edition, § 16–918, shall be made upon application of the plaintiff or his plaintiff's attorney by filing a praecipe requesting same, provided, however, that no such application shall be accepted by the Clerk unless it shall be accompanied by a deposit of the minimum fee for the assigned attorney, which shall be

held by the Clerk until ordered disbursed by the Court. At the same time, plaintiff or plaintiff's attorney shall file with the Office of the Clerk a copy of the complaint and of any other pleadings filed to initiate the cause of action, which shall be forwarded by the Clerk to the assigned counsel with the notice of the assignment.

(2) Compensation. In all uncontested divorce or annulment cases, and in all other cases where the Court may deem it necessary and proper, a disinterested attorney shall be assigned by the Court to enter his appearance for the defendant and actively to defend the cause. Such attorney shall receive such compensation for his services as the Court may determine to be proper and to be paid as the Court may direct. D.C. Court of General Sessions Domestic Relations Rule 5(a).

11. The Memorandum of January 15, 1962 from the Associate Judges of the Domestic Relations Branch to the Clerk states:
Re *Compensation to Assigned Attorneys in Uncontested Cases*
At the last meeting of the three associate judges of the Domestic Relations Branch, it was decided that effective on and after February 1, 1962, the minimum standard fee to be allowed assigned attorneys in uncontested divorce or annulment cases that go to final trial shall be One hundred dollars ($100.00), due and payable upon the completion of the trial. This shall not preclude the trial judge from awarding a larger fee in the event extended and greater services than average are required of an assigned attorney in any unusual case.

the Rule and the *in forma pauperis* statute appear to be contradictory, they are actually reconcilable. The $100 minimum fee requirement is only a guideline set forth in a memorandum by the court for its own use in cases where attorneys' fees are deemed by the court to be proper and was not promulgated by the court to deny indigents equal protection under the laws. Obviously, indigents cannot pay such attorneys' fees and they are not to be required to do so. In indigent cases the court should request members of the bar of the court to represent such persons on an uncompensated basis. This was the practice in the United States District Court before the divorce jurisdiction was transferred to the General Sessions Court and we know of no good reason why it should not be revived for *in forma pauperis* cases in the Court of General Sessions.

## VI

■■■■ Counsel for appellants further requests this court to rule that appellants be permitted to prosecute their actions to completion "without prepayment of filing fees, counsel fees for the absent defendant, or publication costs."[12] We limit our decision here to the disposition we have indicated with respect to counsel fees for the absent defendant and to those costs which are encompassed by the *in forma pauperis* statute, D.C.Code § 15–712, which we construe to encompass all court costs. More precisely, we do not deal with the auxiliary expense of publication costs which may be an issue only in *Parks*. These costs of publication are paid to newspapers and not to an arm of the court. They are not fixed by the court and are not one of the "costs" covered by the *in forma pauperis* statute here considered. Actually, in some cases, publication is used where a more diligent search would locate the defendant and permit personal service as authorized by D.C.Code § 13–337. Because of the close personal relationship of the parties, this should be possible in most cases. Where publication is required, the court, unless the situation otherwise dictates, should order publication only for the minimum number of times fixed by statute and in the most economical form of suitable publication. The publication statute does not specify in what kind of newspapers the notice must appear, in fact it only states the order shall be "published." Heretofore, court orders have required publication in at least one newspaper of general circulation in the District and General Sessions Rule 4(d)[13] requires publication as well in the Washington Law Reporter. If the most economical form of publication was used in indigency cases, the publication cost would be materially reduced. We see no reason why the court should not do so in the ordinary *in forma pauperis* case.[14] Thus the way is open to the court to reduce the publication costs materially.

12. In actions specified by section 13–336, personal service of process may be made on a nonresident defendant out of the District, and the service has the same effect, and no other, as an order of publication duly executed. D.C.Code § 13–337(a) (1967).

    An order of publication shall be published at least once a week for three successive weeks, or oftener, or for such further time as the court orders. D.C.Code § 13–340(a) (1967).

13. Rule 4(d). Service by Publication and Proof Of. Notices relating to proceedings in this Court of which publication is required shall be published in the Washington Law Reporter for the prescribed time in addition to any papers specifically designated by the Court. Publication shall be proved by affidavit of an officer or agent of the publisher, stating the dates of publication with an attached copy of the order as published. D.C. Court of General Sessions Rule 4(d).

14. In the neighboring states of Virginia and Maryland publication by newspaper is required once a week for four weeks in one paper only. In Virginia, the court may dispense with newspaper publication in any case, if deemed proper, but all publication notices are posted on the court house door and mailed to the defendant's last known post office address. Code of Virginia, 1950, § 8–72; Ann. Code of Maryland, 1957, 9B, Maryland Rules, Rule 105 d.

With respect to the request of appellant Harris that this court "order that appellant be allowed to prosecute her application for a divorce without prepayment of * * * publication costs as may arise," we do not consider that there is any certainty that this cost will arise or, if it does, what the cost will be, or that funds cannot be found by appellant to pay the reduced cost that would result from our prior suggestion. A decision on publication costs will have to await a record presenting concrete facts.

## CONCLUSION

We conclude that both appellants should have been allowed to prosecute their divorces without the prepayment or deposit of costs referred to in D.C. Code § 15–712 and that it was an abuse of discretion to refuse both appellants the authority to so proceed. It is accordingly ordered that both cases be reversed and remanded for trial and that both appellants be permitted to proceed *in forma pauperis* under D.C.Code § 15–712 as interpreted by this opinion.