**Dora E. GOMEZ, Appellant,**

v.

**Miguel F. GOMEZ, Appellee.**

**No. 8012.**

District of Columbia Court of Appeals.

Argued April 25, 1974.

Decided June 23, 1975.

---

Edward E. Schwab, Washington, D. C., with whom Eleanor Hellrung and Andrew T. Moss, Washington, D. C., were on the brief, for appellant.

No appearance was entered on behalf of appellee.

Before REILLY, Chief Judge, and KELLY and HARRIS, Associate Judges.

HARRIS, Associate Judge:

Appellant contends that the trial court abused its discretion in its disposition of her request to achieve service by publication in a divorce proceeding by publishing in only one newspaper. Concluding that the record is inadequate, we remand the case to the trial court without prejudice to appellant's seeking further relief there.[1]

Appellant seeks to divorce her husband, whose whereabouts apparently are unknown. Although she is employed, she was authorized by the trial court to proceed without prepayment of fees or costs. A motion was filed on her behalf which stated in part:

4. That Plaintiff has been unable to serve the Defendant personally, despite diligent efforts, thus making it necessary to serve by publication.

5. That Plaintiff is financially unable to pay for publication in two newspapers.

6. That Plaintiff would be able to raise the amount necessary to publish in the *Washington AFRO–American* which is the least expensive newspaper for publication.

7. That the Plaintiff will be unable to continue with the . . . action if this motion is denied.

8. That this would in no way prejudice the rights of the Defendant in this action.

WHEREFORE, plaintiff asks that her motion be granted and that she be permitted to publish in only the *Washington AFRO–American.*

A divorce proceeding is among the types of actions in which publication is an acceptable method of obtaining service "upon a defendant who can not be found and who is shown by affidavit to be a nonresident, or to have been absent from the District for at least six months . . . ." D.C.

---

1. We seriously question the finality—and hence the appealability—of the trial court's ruling, *see* D.C.Code 1973, § 11–721(a), notwithstanding appellant's claim that it prevented her from carrying her cause of action forward. However, in light of our disposition of the appeal, we need not resolve that question.

Code 1973, § 13–336(a); see also § 13–336(b).[2] Section 13–340(a) of the Code states:

> An order of publication shall be published at least once a week for three successive weeks, or oftener, or for such further time as the court orders.

The Superior Court duly adopted a rule dealing with publication. Its Domestic Relations Rule 4(j) provides:

> Service by Publication. Notices relating to proceedings in this Division of which publication is required shall be published in the Washington Law Reporter for the prescribed time in addition to any other newspaper or periodical specifically designated by the Court. If it is shown to the satisfaction of the Court that an undue hardship would be incurred by the requirements of this section it may order notices to be published in any other manner deemed appropriate within D.C.Code . . . § 13–340. Publication shall be proved by affidavit of an officer or agent of the publisher stating the dates of publication with an attached copy of the order as published.[3]

Thus, the basic requirement of publication was prescribed by Congress, and the related Superior Court rule provides flexibility for parties of limited means. However, when appellant sought approval for publication solely in the *AFRO–American*, no facts as to publication costs were presented to the trial court. The motion contained merely naked assertions (1) that the appellant could not afford to publish in two newspapers, and (2) that the *AFRO–*

*American* was the least expensive newspaper. The trial court's Judge in Chambers [proceeding ex parte as authorized by Super.Ct.Dom.Rel.R. 12–I(b)] concluded that appellant was entitled to some relief, and authorized publication in only one newspaper, thereby avoiding publication in the *Washington Law Reporter*. However, the order as signed directed publication in the *Washington Star-News*, rather than in the *AFRO–American*.

Appellant contends that the trial court abused its discretion, to the extent of committing reversible error, by selecting a newspaper other than the one preferred by her counsel. In support of that argument, appellant recites comparative cost figures to us, alleging in part that the charge for publishing in the *Star-News* was greater than the combined cost of publishing in both the *Washington Law Reporter* and the *AFRO–American* would have been.[4]

That may or may not be true. However, no cost figures were presented to the trial court, either before or after the order in question was signed. Thus, the trial court exercised its discretion without having the information now argued to us. Nonetheless, we are asked to hold that the trial court abused its discretion.

The record could not support any such holding. The integrity of appellant's counsel is not questioned, but "it is axiomatic that an appellate court may not consider material not part of the record from the court below." *Hohensee v. Vanech*, D.C.Mun.App., 161 A.2d 703, 704 (1960). *See also Smith v. Brooks*, D.C.App., 337

---

2. Section 13–338 of the Code provides:
   An order for the substitution of publication for personal service may not be made until:
   (1) a summons for the defendant has been issued and returned "Not to be found," and
   (2) the nonresidence of the defendant or his absence for at least six months is proved by affidavit to the satisfaction of the court.

3. The comment to Rule 4(j) states in part: Section (j) has been added to specify how publication shall be made with a proviso to reduce rigidity where such form of service must be utilized in forma pauperis cases.

4. It is alleged in appellant's brief that the cost of publishing in the *AFRO–American* would have been $35.00, with the expected charge for the *Washington Law Reporter* being $42.50. The *Star-News* allegedly submitted a bill for $93.45.

A.2d 493 at 494, n. 3. This principle was expressed forcefully in *Pinkston v. Carter*, D.C.Mun.App., 150 A.2d 629, 632 (1959):

> It also needs to be said, as has been done time and again, that appellate review must be limited to matters in the official transcript of record and cannot be based on statements of counsel which speak against the record either by way of contradiction or by unauthorized additions thereto.[5]

■ We recognize, as noted by our dissenting colleague, that another division of this court was willing to overlook comparable deficiencies in the record in *Johnson v. Johnson*, D.C.App., 329 A.2d 451 (1974). In that case, a wife who was on welfare sought approval for publication only in the *AFRO–American* in a divorce proceeding. No comparative cost figures were presented to the trial court, and the plaintiff's request for relief was denied outright. On appeal, as is true here, only one side was represented; only one viewpoint was presented to the court. In an opinion written by our present dissenter, the trial court's ruling was reversed. However, the fact that an inadequate record was passed over sub silentio in that case does not require us to act in disregard of an inadequate record in any other case.[6] Cf. *Brown Shoe Co. v. United States*, 370 U.S. 294, 307, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962).

■ We are not faced here with the question of denial of access to the courts which prompted the Supreme Court's opinion in *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).[7] Appellant has been permitted to proceed in forma pauperis. She may be dissatisfied with the statutory requirement of publication, or with the Superior Court's Domestic Relations Rule 4(j). See *Harris v. Harris*, 137 U.S.App.D.C. 318, 325, 424 F.2d 806, 813, cert. denied, 400 U.S. 826, 91 S.Ct. 50, 27 L.Ed.2d 55 (1970). However, the record upon which we are asked to decide this appeal presents no basis for a finding that the trial court abused its discretion, and certainly no basis on which any constitutional issue could be reached. Accordingly, we conclude that we should neither affirm nor reverse, but rather should remand the case, without prejudice to appellant's seeking appropriate further relief in the trial court.

A final observation highlights the unsatisfactoriness of (1) giving the trial court inadequate information on the basis of which it is asked to exercise its discretion, and then (2) appealing to us on an inadequate record with a claim that the trial court abused its discretion. Assuming, as we do, that there is no basis for now considering whether the statutory requirement for publication is constitutionally permissible, it makes no real difference to appellant whether we affirm, reverse, or remand. Publication has been made in the *Star-News*; appellant could obtain proof of that publication by paying for it. If she continues to be unable or unwilling to bear that expense, she still will be obliged to

---

5. Relative publication costs are not items of which we properly could take judicial notice. Even if they were, however, we share the view that "judicial notice should not be used as a device to correct on appeal an almost complete failure to present adequate evidence to the trial court." *United States v. Campbell*, 351 F.2d 336, 341 (2d Cir. 1965), cert. denied, 383 U.S. 907, 86 S.Ct. 884, 15 L.Ed.2d 662 (1966).

6. Our dissenting colleague does not contend to the contrary, for our disposition of the *Johnson* case could not vitiate the principle

that appellate courts are bound by the records before them.

7. In *Boddie*, it appears that a publication cost was part of the trial court's filing fee if service could not be obtained otherwise. In its opinion, the Supreme Court noted the importance of making a defendant aware of an action brought against him. *Boddie v. Connecticut, supra,* 401 U.S. at 378, 91 S.Ct. 780. This is particularly true in the domestic relations area, for a divorce affects such vital factors as present and future property interests, the right to remarry lawfully, and Social Security benefits for both parties.

seek further relief from the trial court irrespective of which course we follow. That is, in order to continue with her divorce action, appellant still must achieve service, presumably by publication if service cannot be obtained otherwise. This would be equally true if we were to reverse, as our dissenting colleague would prefer, as well as if we were to affirm or remand.

We assume that in seeking further relief, appellant will supply to the trial court the necessary factual information which will permit it to exercise its discretion with a full awareness of the circumstances.[8] Only after a proper record has been made, with a trial court ruling based thereon, could we properly be in a position to consider any possible question of an abuse of trial court discretion. *See Johnson v. Johnson, supra,* 329 A.2d at 452–53 (Reilly, C. J., concurring).

*Remanded.*

KELLY, Associate Judge (dissenting):

On October 2, 1973, on the ground of voluntary separation, appellant filed suit for an absolute divorce from her husband of four years, two of which were spent living apart.[1] She thereafter filed an affidavit of indigency, together with a detailed financial statement, and was allowed to proceed with the divorce action without prepayment of fees or costs, including those for appointment of counsel.

Appellant was unable to serve the summons and complaint on her husband, whose whereabouts are unknown, and she so informed the court in an affidavit of diligent search.[2] She then filed a motion to reduce the service by publication requirements of Super.Ct.Dom.Rel.R. 4(j) to one newspaper, alleging that she was the sole support of herself and her two minor children; was employed at a gross salary of $370 per month ($317 take-home);[3] was proceeding with her divorce action in forma pauperis, and that she was financially unable to pay for publication in two newspapers. With commendable candor, appellant acknowledged that she would be able to raise the amount necessary to publish in the *Washington AFRO–American,* "which is the least expensive newspaper for publication",[4] but that she would be unable to continue with her divorce action if the motion was denied. In an order of November 14, 1973, the court specifically found that for good cause shown appellant should be allowed to reduce the publication requirement to one newspaper but inexplicably, and without notice to appellant, changed that newspaper from the *Washington AFRO–American* to the *Washington Star-News.* A certified copy of a printed order to the same effect was sent to the newspaper that same day.[5] In the notice of appeal, and again in response to an inquiry at oral argument before this court on April 24, 1974, counsel for appellant asserted that the order was entered ex parte, by a judge in chambers, without notice or hearing.

Appellant stated in her brief that the cost of publication in the *Washington Star-News* was at that time $93.45 as op-

---

8. If appellant had gone back to the trial judge to seek relief after learning what had happened, rather than noting an appeal, the matter might well have been resolved without any need for an appeal.

1. No children were born of the marriage and there are no property rights to be adjudicated. Appellant has two minor children by a previous marriage.

2. Appellant lived in the same apartment building where she had shared an apartment with her husband before their separation. By way of emphasizing her inability to locate her husband, she states in her brief that the court had ordered her husband to refrain from threatening, molesting or assaulting her, or to get in touch with her in any way. *Gomez v. Gomez,* IF 056–71.

3. In her financial statement appellant lists monthly expenses at $375.26.

4. R. at 9.

5. R. at 15.

**428**

posed to $35 in the *Washington AFRO–American*. And again, when queried at oral argument, counsel stated that appellant did not know about the order of publication until the notice had been twice published, and that she had thereafter been billed for that amount. The majority says that this may or may not be so, and would remand the case to the trial court because of an inadequate record.[6] I rely upon the integrity of counsel's representations to this court and would dispose of the merits of this appeal without further delay.

In an almost identical case, *Johnson v. Johnson*, D.C.App., 329 A.2d 451 (1974), this court held it was error to deny a motion for an order of limited publication, accepting the comparative cost figures presented without question. Here, of course, the motion for limited publication was granted, yet the substitution of newspapers was tantamount to a denial of the motion, effectively precluding appellant from further prosecution of her action for divorce. The majority suggests that the judge in chambers decided the motion in a vacuum. I would not so characterize the learned judge's conduct and think it clear that he was aware that appellant's predicament was precisely as stated in her motion. Indeed, he found that appellant had shown good cause to reduce publication to one newspaper and this finding was surely based upon appellant's inability to serve her husband despite diligent efforts to find him, and her financial inability to proceed with her divorce action unless publication in the *Washington Law Reporter* be dispensed with and publication in the *Washington AFRO–American, the least expensive newspaper,* be allowed.[7] How the *Washington Star-News* entered the picture is unknown. How counsel could have anticipated such a happenstance, when no such relief was requested, or could have

voiced an objection when the deed was done ex parte, without notice to anyone, and a certified copy of the order sent to the newspaper the same day defies explanation.

I would hold that the trial judge abused his discretion when, in the guise of affording appellant the financial relief she had requested and to which he found her entitled, he erected by fiat a financial barrier she could not meet, and reverse.

---

6. The majority nevertheless concludes from this inadequate record that publication has been made in the *Star-News* and appellant need only pay the bill to obtain proof of publication.

7. *See Harris v. Harris,* 137 U.S.App.D.C. 318, 325, 424 F.2d 806, 813, *cert. denied,* 400 U.S. 826, 91 S.Ct. 50, 27 L.Ed.2d 55 (1970).