FIELD, MORRIS & Co. *v.* DANIEL STEARNS.

*Fraudulent Representations.    Attachment.    Sale.    Attaching*
*Creditors.*

Where goods are obtained on credit by such false and fraudulent representations as
would vitiate the sale as against the vendee, the vendor may reclaim them after at-
tachment and before sale on execution, though attached by creditors on debts con-
tracted subsequent to such fraudulent sale, and on the strength of the vendee's
having a good stock of goods in his store, and on no other inducement, a part of
which stock was the goods obtained by said fraudulent representations.

REPLEVIN.   Plea, the general issue.    Trial by jury, December
term, 1868, BARRETT, J., presiding.

The plaintiffs' evidence tended to show that the goods named in
the declaration, and some other like goods, were purchased of
them at their store in the city of New York, by Edward Culligan,
a partner of the firm of Culligan & Harwood, for said firm, and in
its name, and on its credit, which firm commenced business early
in July, 1866, at Windsor, Vermont, and soon after it had been
formed for the purpose of carrying on trade in said Windsor ; that
of said goods, a bill amounting to $240.90, was so obtained on
the 3d day of July, 1866 ; and another bill amounting to $144.62
on the 24th day of said July, by false and fraudulent representa-
tions made by said Edward, as to the capital and other property
owned by said firm, and as to the particulars of their means,
facilities, prospects and purposes in their proposed business as
merchants ;  said representations being such as to vitiate the sale
as between said firm and the plaintiffs, and entitle the plaintiffs to
reclaim the goods.

The evidence showed that the goods, so obtained on the 3d of
July, reached the store in Windsor on the 5th or 6th of said
month, and those obtained on the 24th reached said store on the
26th or 27th of said month.    Culligan & Harwood commenced
business at said store; July 4, 1866.

The defendant gave evidence by George E. Dame, that as agent
of Wadleigh, Jones & Co., of Boston, on the 9th day of July, he
was at the store of Culligan & Harwood, and sold them a bill of

goods of over $80 on the strength of their having a good stock of goods in their store, and on no other inducement; that there was then in the store drugs and medicines, and quite a respectable stock of dry goods.

The defendant also gave evidence by Rollin Amsden that, as member of the firm of R. & C. Amsden, he sold goods to Culligan & Harwood in said month of July, possibly some of them in the month of August, about $180 worth in all; that not far from $115 had been paid, and a judgment obtained for the balance; that he so sold said goods from the fact of their having a store well filled with goods, and trusted them on the strength of said store of goods, and no other inducement. All the goods in the possession of Culligan & Harwood in said store, including the goods named in said writ of replevin, were attached by the defendant, as constable of Windsor, on various writs of attachment against Culligan & Harwood, on the 15th day of August, 1866.

The plaintiffs' evidence tended to prove that Culligan & Harwood had in their store from said 4th of July, to and at the time of said attachments, a stock of goods such as is usually kept for sale in country stores, including a moderate stock of drugs and medicines,—all in value of some $3,000 or $4,000.

The officer serving said writ of replevin took from said store such articles as plaintiffs could identify as having been obtained from them on the 3d and 24th days of July, 1866, and then in the custody of the defendant. This writ was served on the 10th of September, 1866.

The defendant gave in evidence the record of a judgment rendered on the 22d of September, 1866, in favor of Wadleigh, Jones & Co., and execution issued thereon for $84.94 damages and $12.15 costs, satisfied March 2, 1867, for only $33.36. Also, the record of a judgment rendered on the 22d of September, 1866, in favor of R. & C. Amsden, for $74.75 damages and $12.15 costs, and execution issued thereon returned wholly unsatisfied; and also gave evidence by said Rollin Amsden that said judgment was for the unpaid balance so sold by him to Culligan & Harwood.

There was no question made whether or not there were writs by which suits were brought in which said judgments were ren-

dered, nor whether such writs were put into the hands of the defendant as constable, and were among the writs on which said attachments were made on the 15th of August, 1866 ; and there was no evidence upon the subject except that above stated, or referred to.

The ruling of the court, hereafter stated, was made on the supposition that there were such writs, and they were among those on which such attachments were made. It appeared that the business of Culligan & Harwood was ended by said attachments, and that they had no considerable means besides said store of goods to meet and pay their debts, and that they were entirely insolvent, and it was not shown that their condition in this respect has since improved.

The defendant's counsel claimed that the plaintiffs were not entitled to recover, and on the court's suggesting that, for the purposes of this trial, they would hold as claimed, and rule that if the jury should believe the testimony given by Dame and Amsden, in connection with the facts shown as to the attachments made by the defendant, and as to the judgments and executions in favor of Wadleigh, Jones & Co., and R. & C. Amsden, the plaintiffs could not recover. The counsel for the plaintiffs consented that a verdict might be taken for the defendant, with leave to except to such ruling. The court *pro forma* so ruled, and a verdict was taken accordingly, to which the plaintiffs excepted.

*Gilbert A. Davis* and *Julius Converse*, for the plaintiffs, maintained that the county court had no right to make the *supposition* in respect to the attachments, and that the case should be determined, and the rulings of the county court discussed, in the light only of facts shown in regard to the attachments. The case at bar does not come within any exception to the general rule permitting a vendor to reclaim his goods from a fraudulent vendee. The only exception is where the custody of the goods has passed to a third person for a new and valuable consideration, *bona fide*, without notice. *Sawyer* v. *Joslin*, 20 Vt., 178 ; *Fitzsimmons* v. *Joslin*, 21 Vt., 129 ; *Hackett* v. *Callender*, 32 Vt., 97 ; *Hart* v. *Bank*, 33 Vt., 266 ; *Poor* v. *Woodburn*, 25 Vt., 234 ; Story on

Sales, § 445 *a*, § 387 ; 2 Hill. on Torts, 146 ; Drake on Attach., § 246 ; *Hoffman* v. *Noble,* 6 Met., 73 ; *Rowley* v. *Bigelow,* 12 Pick., 307 ;, *Atwood* v. *Dearborn,* 1 Allen, 483 ; *Easter* v. *Allen,* 8 *Ib.,* 9 ; *Dow* v. *Sanborn,* 3 *Ib.,* 182 ; *Wiggin* v. *Day,* 9 Gray, 97 ; *Bussing* v. *Rice,* 2 Cush., 49 ; *Mowrey* v. *Walsh,* 8 Cowen, 238.

*James N. Edminster* and ———— *Marcy,* for the defendant, cited *Fitzsimmons* v. *Joslin,* 21 Vt., 129 ; *Poor* v. *Woodburn,* 25 Vt., 234 ; *Hackett* v. *Calender,* 32 Vt., 97 ; *Buffington* v. *Gerrish,* 15 Mass., 156 ; *Root* v. *French,* 13 Wend., 570 ; *Gilbert* v. *Hudson,* 4 Green., 345 ; *Bradley* v. *Obear,* 10 N. H., 477 ; *Hoffman* v. *Noble,* 6 Met., 68 ; *Hussey* v. *Thornton,* 4 Mass., 405 ; *Lickbarrow* v. *Mason,* 2 Durn. & East, 63 ; *Parker* v. *Patrick,* 5 *Ib.,* 175 ; *Stevenson* v. *Newnham,* 16 Eng. Law & Eq., 401 ; *Somes* v. *Brewer,* 2 Pick., 184 ; *Mowry* v. *Walsh,* 8 Conn., 238.

The opinion of the court was delivered by

PROUT, J. It is unnecessary for present purposes to consider the question relating to the attachment of the goods in controversy ; whether that fact sufficiently appears or not. As to that, we express no opinion, as we dispose of the case upon other grounds, assuming it to be as the defendant claims.

The replevied goods were obtained of the plaintiffs by means of false and fraudulent representations, made by Edward Culligan, of the firm of Culligan & Harwood, the plaintiffs' vendees and the attaching creditors' insolvent debtors. The representations were of such a character as to vitiate the sale and entitle the plaintiffs to reclaim the property as against that firm. The goods then were the plaintiffs', fraudulently obtained by virtue of a sale which gave Culligan & Harwood no absolute title as against their vendors, the plaintiffs. It is however urged, that as to such a sale, if followed by a *bona fide* attachment on a debt contracted subsequently, as disclosed by this case, and before any measures had been taken to rescind it and reclaim the property, the innocent vendors are divested of their interest, and that the attaching creditors acquire a superior right, which, if perfected

by sale on execution, gives them the title. In short, that the attaching creditors stand upon the same ground an innocent purchaser would, had he purchased the goods upon a new and sufficient consideration without notice of the fraud or deceit. This claim of the defendant is based upon the further fact disclosed by the case, that the attaching creditors in this case gave the fraudulent vendees credit for the goods they sold them upon the strength of a stock of goods in their store, supposing them to be their property, and upon no other inducement.

It is only necessary to remark, in passing to a consideration of the case, that the plaintiffs had a complete right to reclaim the goods as against Culligan & Harwood. This, in view of the facts, has been so often decided, and upon grounds so reasonable and just, that it is not drawn in question on this argument. The fact thrown into the case, that the attaching creditors were induced to sell their property on credit in the manner disclosed, does not affect that principle, and in our view is unimportant as between these parties. The case as made up precludes it, as the plaintiffs are wholly innocent in respect to any intent of aiding their vendees in acquiring a false credit to the injury of any one ; but were themselves deceived and defrauded, although they made inquiry, as the circumstances of the case justify in saying, which these attaching creditors did not. They solicited their custom ; merely saw a stock of goods in the store of Culligan & Harwood, made their sales to them on credit, and took the consequent risk ; and the proposition insisted upon growing out of these facts strikes us as somewhat dangerous, if it is true that we must close our eyes to the clear legal right of the plaintiffs under such circumstances. All we desire to say of it is, if there was no other inducement than mere possession, and *ownership* of them was not an element operating upon the minds of those attaching creditors, and calling for inquiry, it is a singular fact in the history of this transaction. The probability is, and that is all there is of it, that they were willing to trust to appearances—did, and misjudged ; but were really no more deceived than they would have been had the plaintiffs' goods been in the store under a conditional sale, or to sell on commission ; to which, if such had been the fact, they could

acquire no lien by attachment as the property of Culligan & Harwood, and as against the real owners. *Callanan* v. *Edwards*, 32 N. Y., 483; *Clark* v. *Hale*, 34 Conn., 398. The case then presents itself unaffected by this circumstance or fact, and we conceive the authorities of our own court, fairly construed and applied, virtually determine it. In *Fitzsimmons* v. *Joslin*, 21 Vt., 129, which is a case where goods were purchased on false representations, and which, after they had arrived at their place of destination, were attached as the property of the fraudulent vendee, by two firms, on debts contracted prior to their purchase, one of said firms being a party to the fraud, and the other not: as to the innocent attaching firm or party, the court in that case say, that their right to the goods attached must rest on the title of the fraudulent vendee, and that that question is free from doubt. "The question is, has the seller been cheated and deceived by means for which the purchaser is legally responsible." If he has, as held in that case as against the party not implicated in the fraud, the vendor might, upon obtaining knowledge of it, "rescind the sale and recover the goods so long as they remained in the hands of the vendee, or had not passed from him on a new and valuable consideration. This is but simple justice if we consider the parties equally innocent." The question is again alluded to in *Poor* v. *Woodburn*, 25 Vt., 234. We quote: "a creditor who attaches property obtained by fraudulent practice or misrepresentation does not acquire any better right to hold it than the fraudulent vendee had;" and this, it will be observed, is stated without qualification as being the rule applicable to attaching creditors. "They get nothing by their attachment. They stand in the shoes of their debtor." *Hackett* v. *Callender*, 32 Vt., 97. A purchaser advances a new consideration for and in respect to the property itself and its title, and comes within the rule founded on principles of policy for the benefit of trade and the security of the community, which protects him, but which is not the case as to an attaching creditor, whether his debt accrued prior or subsequent to the sale to the fraudulent vendee. There is a clear distinction in the cases, found in the intrinsic character of the transaction under which a lien or title is claimed, as it does not rest in agreement

or consent, and this is what the cases mean as applied to the question. In the present case the attaching creditors paid or advanced no consideration in respect to these goods, or in consequence of any representation as to the title, but stand upon their attachments; which, if followed up and perfected by a sale, might ordinarily pass the title, but that is a very different mode of acquiring it, than by *purchase*. They are creditors and not vendees.

The case presents another feature which is decisive. These claiming attaching creditors had not so far as appears acquired title to the goods replevied as against Culligan & Harwood when they were taken upon the plaintiffs' process. At that time there had been no sale on execution—there has not been as yet, but they had at most only a lien upon them by virtue of the attachments. In *Hackett* v. *Callender*, *supra*, the court, alluding to a class of cases involving the rights of conflicting claimants to property affected by a trust and notice of it, say, that notice of the trust before the actual payment of the money for it by a purchaser, although it may be secured and the conveyance executed, is equivalent to notice before the contract and precludes the purchaser from paying the money and perfecting the contract. This principle is applied to an attaching creditor in that case, who was claiming the property in controversy under a levy, and the court observed, that notice to the attaching creditor, before he gets the legal title by levy and so discharges his debt, puts an end to his lien by virtue of his attachment as between him and the real owner. That principle aptly and justly applies to this case. Before these attaching creditors discharged their debts by a sale of the goods on execution, they had notice, as apparent from the controversy of the fraud vitiating the sale, and are affected by it, and as a purchaser would be before he acquired the title; as held in the case referred to. So that, regarding either the reason or justice of the case, we think the judgment should be reversed and cause remanded.