ANDERS, C. J., and SCOTT, DUNBAR and HOYT, JJ., concur.

[No. 322. Decided February 5, 1892.]

J. T. SCOTT AND S. C. SCOTT, *Respondents,* v. J. H. Mc-GRAW, *Appellant.*

REPLEVIN—RESCISSION OF SALE—PROPERTY IN HANDS OF SHER-
IFF—BONA FIDE PURCHASER—PARTIES—SUFFICIENCY OF EVI-
DENCE.

The vendor of goods sold upon credit may rescind the sale for fraud on the part of the vendee, and in such case may maintain an action for their recovery against a sheriff in whose custody the goods are held under a valid writ of execution.

The rescission of a sale of goods on the ground of fraud may be made by the vendor subsequent to the goods coming into the custody of a sheriff under an execution against the property of the vendee, as an execution creditor does not stand in the position of a *bona fide* purchaser for value and without notice of the fraud.

In such an action, the sheriff being in possession of the property, is the only necessary defendant.

Where the evidence in an action to recover personal goods shows that the vendee represented to the plaintiffs that he was solvent and paying cash for goods and discounting his bills, while in fact he was heavily indebted, a great proportion of his indebtedness being due at the time and the balance would fall due in a short time ; that his entire stock of goods was not equal to the amount of his indebtedness; that he confessed judgment upon older debts soon after receiving plaintiffs' goods, and that he did not make his financial condition known to plaintiffs, but agreed to discount their bill two months before it became due; such evidence is sufficient to warrant the conclusion of the court below that at the time the vendee made such fraudulent representations and obtained possession of said goods, he was insolvent and unable to pay for them; that he knew he was insolvent and concealed the fact from plaintiffs, and that hedid not intend to pay for the goods when he received them.

*Appeal from Superior Court, King County.*

The facts in this case are fully stated in the opinion.

*Allen & Powell,* for appellant.

*Thompson, Edsen & Humphries,* for respondents.

The opinion of the court was delivered by

ANDERS, C. J.—The respondents, who were doing business in the city of New York, sold certain jewelry and other merchandise to one George G. White, who was carrying on the business of a jeweler in Seattle, in this state. The goods were delivered on October 31st and November 4th and 5th, 1890, and by the contract of sale White was given a credit of four months, with the privilege of paying the indebtedness on January 1, 1891, at a discount of six per cent. Soon after the delivery of the merchandise to him, White confessed judgment in a large amount in favor of other creditors, to whom he had been for some time indebted. Executions were issued upon the judgments and placed in the hands of appellant, who was sheriff of King county, and were by him levied on the entire stock of goods then in the possession of White, including those purchased from respondents. Having heard of the seizure of the goods, the respondents demanded the possession of them from appellant, which demand not being complied with, they instituted this action under the statute to recover the possession of the property. They sought to disaffirm the sale on the ground of fraud, and claimed that it was induced by false and fraudulent representations made by White as to his solvency, which were relied on by them, and that, at the time of the purchase, he was hopelessly insolvent, and unable to pay his debts, knew himself to be so, but concealed the fact from respondents, and that he purchased the goods without any intention of ever paying

for them, and for the purpose of cheating respondents out of their value.

It is conceded that the vendor of goods sold upon credit may, as between himself and the vendee, rescind the sale for fraud on the part of the latter, and recover the goods by replevin from the fraudulent vendee, but it is contended by appellant that this action will not lie against a sheriff for goods in his custody under a valid writ. Numerous authorities are cited to sustain the proposition, and there is no doubt that such was the rule at common law. The officer was regarded as the mere minister of the court, and chattels in his possession as in the custody of the court, and they could only be taken upon its order, or by its permission. And any interference with them without such permission was looked upon as an infringement of the prerogative of the court and was regarded as a contempt. Wells on Replevin, § 243. But the rule is not applicable generally to all cases where an officer undertakes to execute process. It only applies when the seizure is rightful and upon a valid and sufficient writ. And, notwithstanding many cases to the contrary, we think the doctrine is now well established, that if an officer, through mistake or design, seizes property upon a writ of execution or attachment not belonging to the defendant in the writ, or not subject to seizure though belonging to the defendant, he becomes a trespasser, and the goods may be taken from his possession by replevin, or the owner may sue him in trespass or trover at his election. Wells on Replevin, § 245, and cases cited; Cobbey on Replevin, § 300; *Dawson v. Baum*, 3 Wash. T. 464 (19 Pac. Rep. 46). Under such circumstances the property so taken cannot strictly be said to be in the custody of the law, for, by the law, the officer is commanded to take and hold the property of the defendant only. And under such a mandate a seizure

of the goods of a stranger to the writ is a plain violation of legal duty, and the process, though regular and valid upon its face, can afford the officer no justification.

In this state we have no common law action of replevin. That action has been abrogated, and the statutory action commonly called "claim and delivery," under the codes of the various states, has been substituted in its stead. And whatever may be the common law doctrine, it would seem that, under our statute, an action to recover the possession of personal property can be maintained by the owner of goods taken by a sheriff under a writ of execution or attachment in an action to which he was not a party defendant. It is provided in § 143, Code of 1881 (§ 256, Code of Procedure), that when a delivery is claimed, an affidavit shall be made by the plaintiff, or some one in his behalf, showing, among other things, "that the same has not been taken for a tax, assessment or fine, pursuant to a statute, or seized under an execution or attachment against the property of the plaintiff; or if so seized, that it is by law exempt from such seizure." This language plainly implies that in all cases where the property has not been seized under an execution or attachment against the property of the plaintiff himself, he may recover its possession from an officer who may have seized it. Any other construction would render that portion of the affidavit meaningless.

But the learned counsel for appellant insist that a special remedy is provided for the recovery of property levied upon or attached, and that that remedy is therefore exclusive. See Code 1881, §§ 350–4. And in support of that contention our attention is called to the case of *Bernheimer v. Martin,* 66 Miss. 486 (6 South. Rep. 326). It appears, however, that that decision is founded upon a statute of Mississippi of 1880, which, while prescribing a summary

method of trying the rights of property analogous to that
provided by our statute, expressly provides that replevin
shall not lie in such cases. Code Miss., § 2633. The de-
cision is no doubt in accordance with the law of that state,
but it can have no authoritative force in this state where
the legislature has not seen fit to make the particular
remedy there referred to exclusive. We prefer to adopt
the view expressed by the court in *Dawson v. Baum, supra*,
that the plaintiff may have a choice of either of the remedies
provided by statute, but that judgment in one action would
be a bar to relief in the other. And this seems to be the
rule generally where these different remedies prevail. See
Cobbey on Replevin, § § 308, 1220.

Having concluded that the statutory action for the re-
covery of the possession of personal property is a proper
remedy in this class of cases, the next question to be de-
termined is, could plaintiffs rescind their sale to White and
revest the title to the goods in themselves after they were
in the custody of the defendant under an execution against
the property of their vendee? It is one of the settled prin-
ciples of law that fraud will vitiate any contract. And it
is not denied by appellant that a sale and delivery of goods
procured by fraudulent representations of the purchaser
may be avoided by the vendor, but it is claimed that, in this
instance, the election to rescind came too late, as other in-
terests had intervened. But according to the established
doctrine of the courts, the contract may be rescinded at
any time before the goods have passed into the hands of a
*bona fide* purchaser, that is, a purchaser for value and with-
out notice of the fraud, and the vendor may recover pos-
session in an action of replevin. An execution creditor is
not a *bona fide* purchaser. He parts with no consideration,
on account of the goods, and he takes no greater interest
than his debtor has. In *Oswego Starch Factory v. Len-
drum*, 57 Iowa, 573; 42 Am. Rep. 53, which is one of

the leading cases on this subject, the court, after reviewing numerous authorities, remarked:

"These cases all agree in holding that the creditors of a vendee, who by fraud induced the sale, cannot hold the property under proceeding to enforce their debt against the vendors."

In *Root v. French*, 13 Wend. 570; 28 Am. Dec. 482, it was held that the fraudulent purchaser of goods acquires no title as against the vendor, and has no interest which can be seized on execution. And in *Donaldson v. Farwell*, 93 U. S. 631, the supreme court of the United States held that when a party, by fraudulently concealing his insolvency and his intent not to pay for the goods, induces the owner to sell them to him on credit, the vendor, if no innocent third party has acquired an interest in them, is entitled to disaffirm the sale and recover the goods. In that case the vendor disaffirmed the sale and held the goods, which were claimed by the assignee in bankruptcy of the fraudulent purchaser. See also *Naugatuck Cut ery Co. v. Babcock*, 22 Hun. 481; *Field, Morris & Co. v. Stearns*, 42 Vt. 106; *De Voe v. Brandt*, 53 N. Y. 462; *Buffington v. Gerrish*, 15 Mass. 156; 8 Am. Dec. 97; *Wafer v. Harvey County Bank*, 46 Kan. 597 (26 Pac. Rep. 1032); Cobbey on Replevin, § 285. In view of the above authorities and many others that might be cited, we are of the opinion that the respondents were entitled to disaffirm the sale for fraud after the levy of the execution.

The objection that there is a defect of parties is untenable. The sheriff being in possession of the property was the only necessary defendant in the action. See Cobbey on Replevin, §§ 436, 437; Wells on Replevin, § 134.

This cause was tried by the court without a jury, and it is objected that the evidence is insufficient to justify the findings of fact; that there was no proof that White did not intend to pay for the goods and that mere insolvency

of the vendee with no reasonable expectation of being able to pay is insufficient to authorize the rescission of a sale of goods upon credit by the vendor.    The court found among other things that at the time White purchased the goods, and prior thereto, he fraudulently represented to plaintiffs that he was solvent, able to pay for the same, and that he was buying his goods for cash and discounting his bills; that said goods were purchased from plaintiffs by said White upon a credit of four months, with an agreement and understanding between said parties that the bills for said goods were to be discounted on the first day of January, 1891, at a discount of six per cent.    That plaintiffs relied upon the fraudulent representations of said White, that he was solvent and able to pay for said goods and that he was discounting his bills, and upon such fraudulent representations so made and relied upon they sold him said goods, and plaintiffs were not aware that said representations were fraudulent and false, but believed the same to be true, and upon the faith thereof parted with the possession of said goods and agreed to give said White a credit of four months upon the agreement made at the time, that said White would discount the bills for said goods; that at the time White made said fraudulent representations and at the time he obtained possession of said goods from plaintiffs he was insolvent and unable to pay for said goods, which he then and there well knew, which insolvency was concealed from the plaintiffs, and that he had no reasonable expectation of paying for the goods, and did not intend to pay for them.

We think there is sufficient testimony to support these findings.    The agent or traveling salesman of the plaintiffs testified, in substance, that he visited White at his place of business some time in May, 1890, with a view of selling him such goods as he might desire to purchase; that White informed him that he did not wish to purchase anything from him at that time, but that he would like to do

so when he got ready to move into his new store; that White told him he was buying goods for cash and was discounting his bills, and that an arrangement was made between them whereby White was to inform him by letter when he wished to purchase, and he was to have his principles send a memorandum bill of goods from which a selection should be made by White of such as he desired; that in accordance with this arrangement White wrote him a letter in August informing him that he was ready to receive the goods; that he forwarded the letter to plaintiffs and at the same time advised them to ship the goods, which was done, and that they were received by White the last of October. The witness was in Seattle on the 31st day of October and charged up to White the goods selected by him from the memorandum bill, and on November 4th and 5th delivered the remainder of the goods sold to White. This witness further testified that at the time of the delivery of the goods he asked White if he would pay cash, and the letter responded that he would discount the bill on the 1st of January, but desired a credit of four months, which was finally agreed to. None of this testimony was contradicted by White. But the witness also testified that at the time when the arrangement was made in May, whereby the goods were to be sold to White, the latter expressly stated to him that he did not owe anyone, and that he paid cash for the goods he bought, and that when the goods were delivered he again stated that he paid cash and discounted his bills, and that he relied upon these statements, believed them to be true, and delivered the goods accordingly. White denied making the statement that he owed no one, but admitted that when the arrangement above mentioned was made, and also that when the goods were delivered, he did state that he was paying cash for the goods he was buying, and was discounting his bills, and that he promised to discount plaintiff's bill on

the first of January. It further appears from White's own testimony that in May his indebtedness amounted to seven thousand dollars, which was equal to or greater than the whole of his assets; that this indebtedness was of long standing; that his business was small, and so continued during the summer, and that at the time plaintiffs delivered . the goods in question to him his indebtedness had been increased by further purchases of goods and expenses incurred in fitting up his store to about double the sum it was in May. He was also in arrears for rent, and owed his employes for labor, and a very great proportion of his large indebtedness was then due, and the balance would become due in a short time. His entire stock of goods, at invoice prices, was not equal to the amount of his indebtedness. And, thus situated, he purchased and received the goods of plaintiff and promised to pay for them within two months, and not later than four months, but failed to make known to them his financial condition. He must have known when he received these goods that he could not continue in business and pay for them, and the fact that he confessed judgment upon older debts so soon afterwards is strong evidence that he did know it; and this being so, he is chargeable with the intent of not paying. It is true that White testified that he purchased the goods in good faith and honestly intended to pay for them. But we think, in view of the whole evidence in the case, we would not be justified in reversing the judgment of the court below. We do not dispute the contention of counsel for appellant that the mere fact that White was insolvent at the time he purchased the goods does not prove that he did not intend to pay for them, or that a mere failure to disclose insolvency would authorize a rescission of the contract of sale, but we simply hold that there was sufficient evidence before the court to fully warrant the conclusions , reached by the judge.

Complaint is also made that the court erred in entering
judgment for plaintiffs without a special finding that the
plaintiffs were the parties comprising the firm of J. T.
Scott & Co.    But we think that the finding that the plain-
tiffs sold the goods in controversy to White at the time
therein stated was a sufficient finding that they were the
parties comprising the firm, if any such finding was neces-
sary.    The exceptions to the admission and exclusion of
testimony are not well taken and we will not now stop to
particularly discuss them.

The record discloses no substantial error, and the judg-
ment of the court below is therefore affirmed.

DUNBAR, STILES, SCOTT and HOYT, JJ., concur.