[No. 1438-1. Division One. August 20, 1973.]

Max M. Bowman, *Appellant,* v. Lawrence Waldt, *Respondent.*

*Ann Greenberg,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *Michael F. Woodin, Deputy,* for respondent.

HOROWITZ, J.—This appeal concerns the court's duty, at the request of an indigent judgment creditor, to require the director of the Department of Public Safety of King County, who functions as a sheriff, to levy a writ of execution on the judgment debtor's personal property without prepaying the statutory filing fees and without furnishing a sheriff's indemnity bond generally required of all judgment creditors.

Plaintiff Max M. Bowman obtained a $52.80 judgment against one Vila Fleck in the Small Claims Division of the

Seattle District Justice Court. Upon Fleck's refusal to pay the judgment, plaintiff certified the judgment to the Seattle District Justice Court. That court issued a writ of execution against Fleck's personal property. The writ was delivered to the King County Department of Public Safety, which was charged with the responsibility of executing the writ. Plaintiff, according to his affidavit, was there informed defendant would not execute the writ until plaintiff paid approximately $25 in filing fees. They were said to consist of:

| | |
|---|---:|
| Levy | $ 3.00 |
| Notice of sale (3) | 6.00 |
| Copies (3) | 4.00 |
| Indemnity bond premium pursuant to RCW 36.28.050 | 10.00 |
| Total | $23.00 |
| | plus mileage |

There is no statutory $10 indemnity bond filing fee. We assume the $10 item is the indemnity bond premium charged by the private surety for issuing the bond to one who has the necessary financial resources to justify the surety undertaking the risk. Although we do not treat the $10 charge as a filing fee, we will assume the $10 charge is the premium required to be paid to obtain the bond for the filing of which no statutory filing fee is required.

Plaintiff, an indigent, was financially unable to pay the fees required or to obtain the bond. On the basis of a sworn affidavit attesting to his indigency, he requested prepayment of the fees described to him be waived. Defendant denied the request. Plaintiff thereupon sued to enjoin defendant, Director of the King County Department of Public Safety, from refusing to execute the writ of execution because of plaintiff's failure to prepay such fees. In due course, cross motions for summary judgment were filed. The court granted defendant's motion for summary judgment and dismissed plaintiff's suit with prejudice, but without costs. Plaintiff then appealed in forma pauperis.

Plaintiff contends the trial court should have exercised

its inherent power to require defendant to waive prepayment of required fees and, inferentially, to waive the necessity of furnishing the indemnity bond because of plaintiff's indigency; and, in any case, the court should have required such waiver because plaintiff, as an indigent, has a right under the due process and equal protection clauses of the state and federal constitutions to have execution issued on his judgment. He particularly relies on *Boddie v. Connecticut,* 401 U.S. 371, 28 L. Ed. 2d 113, 91 S. Ct. 780 (1971), later considered.

No doubt implicit in the state's insistence that the people of this state use courts as an alternative to self-help, there is an implied corresponding obligation that the state permit access to those courts. Such an implied obligation might be of little worth if, after using the courts and obtaining a judgment, the state, by its filing and cost requirements, denied an indigent judgment creditor the right to collect the judgment entered by the use of the judgment execution procedure provided by law. The question, therefore, is whether the statutory requirements applicable to all judgment creditors who seek to collect their judgments pursuant to a writ of execution are applicable to an indigent judgment creditor unable to comply by reason of his indigency.

 RCW 36.18.040 authorizes the sheriff to collect the following fees:

For levying each writ of attachment or writ of execution upon real or personal property, besides mileage, three dollars;

. . .

For each mile actually and necessarily traveled by him in going to or returning from any place of service, or attempted service, ten cents;

. . .

For posting notices of sale, or postponement, two dollars besides mileage;

RCW 36.18.060 provides for the prepayment of sheriff's fees as follows:

The officers mentioned in this chapter shall not, in any

case, except for the state or county, perform any official services unless the fees prescribed therefor are paid in advance, and on such payment the officer must perform the services required. For every failure or refusal to perform official duty when the fees are tendered, the officer is liable on his official bond.

RCW 36.28.050 provides in part:

Any sheriff, or other levying officer, may require an indemnifying bond of the plaintiff in all cases where he has to take possession of personal property.

The prepayment of the sheriff's fees described and the furnishing of the indemnity bond are not fees and bond required to be paid and furnished to obtain a judgment. They are fees and an indemnity bond required to be furnished in order to collect a judgment obtained.

Courts have often recognized indigents are as much entitled to have access to the courts as are the more affluent. Courts at common law exercised an inherent power to permit an indigent to press his claim in the courts without the payment of filing fees or other requirements. *O'Connor v. Matzdorff*, 76 Wn.2d 589, 458 P.2d 154 (1969). In *O'Connor* the action was for replevin and damages for $215.50 brought in a justice court. The Supreme Court exercised its inherent power to require a waiver of the prepayment of statutorily-required court filing fees by an indigent. The court stated:

We hold that a justice of the peace has the inherent power to waive prepayment of the justice court fee where justice requires such action. Whether he should do so or not depends, of course, upon the showing of poverty made by the applicant and upon whether his claim appears to be brought in good faith and with probable merit.

76 Wn.2d at 606.

In *Ashley v. Superior Court*, 82 Wn.2d 188, 509 P.2d 751 (1973), the court recognized its inherent power to waive a clerk's filing fee in a divorce case, although it refused to order the expenditure of public funds to pay the costs of service of process. The court said:

To support the waiver of fees in forma pauperis, the applicant must make a clear showing to the court that, but for such waiver, the plaintiff would be unable to maintain the action for divorce, and that there are no alternative means available for procuring the fee. The plaintiff must show to the court's satisfaction that the indigency is genuine, the need for the divorce is real, the grounds are meritorious and neither frivolous nor transient, and the divorce action is brought without the connivance, concurrence or collusion of the defendant. Finally, it should be made to appear that the filing fees cannot be obtained from other sources nor taxed in advance upon the defendant spouse.

82 Wn.2d at 192.

Courts of other states, in the exercise of inherent power, have waived a variety of fees and costs for the benefit of an indigent who might otherwise be denied access to the courts in the pursuit of his claim for relief. *See generally* Comment, *Access to the Civil Courts: The Need for Continuing Reform,* 37 Albany L. Rev. 135 (1972); Note, *Indigent Access to Civil Courts: The Tiger Is at the Gates,* 26 Vand. L. Rev. 25 (1973).

Plaintiff contends the principles applicable to the waiver of the prepayment of fee requirements on behalf of an indigent for getting into court are also applicable to the waiver of statutory fees and bond required for collecting the judgment obtained. Assuming this to be so, we conclude the court neither abused its discretion in refusing to exercise its inherent power to waive fee and bond requirements, nor erred in refusing to treat the waiver of these requirements as mandated by the due process or equal protection clauses of the United States and state constitutions.

We first consider the constitutional provisions particularly in light of *Boddie v. Connecticut, supra; United States v. Kras,* 409 U.S. 434, 34 L. Ed. 2d 626, 93 S. Ct. 631 (1973); and *Ortwein v. Schwab,* 410 U.S. 656, 35 L. Ed. 2d 572, 93 S. Ct. 1172 (1973).

*Boddie v. Connecticut, supra,* was a class suit commenced

by Connecticut welfare recipients who sought divorces. They contended state law requirements for the commencement of litigation, including payment of court fees and costs for service of process, unduly restricted their access to the courts and thus violated due process and equal protection requirements. The majority opinion of the Supreme Court of the United States upheld this contention in divorce cases. It pointed out the state has a monopoly on the dissolution of marriage by divorce and it would violate due process to deny an indigent the right to have a divorce by insisting upon the prepayment of fees he could not afford to pay. Justice Brennan concurred on the grounds that both due process and equal protection required that result. Justice Douglas relied upon the constitutional requirement of equal protection. Justice Black dissented. He subsequently pointed out that if *Boddie* was going to be the law, its rationale should be extended to all civil cases. He stated that "no person can be denied access to those courts, either for a trial or an appeal, because he cannot pay a fee, finance a bond, risk a penalty, or afford to hire an attorney." *Meltzer v. C. Buck LeCraw & Co.*, 402 U.S. 954, 955-56, 29 L. Ed. 2d 124, 91 S. Ct. 1624 (1971) (Black, J., dissenting), *denying cert. to* 225 Ga. 91, 166 S.E.2d 88 (1969).

Following *Boddie* there was considerable law review support for the equal protection argument and suggesting *Boddie* was but the beginning of the recognition of a constitutional right of access to the courts regardless of whether the case did or did not involve divorce. *E.g.*, Abram, *Access to the Judicial Process*, 6 Ga. L. Rev. 247 (1972); Comment, *Boddie v. Connecticut and the Constitutional Rights of Indigents*, 45 Temp. L. Rev. 390 (1972).

*United States v. Kras, supra,* by a divided court, limited the expected reach of *Boddie*. In *Kras* it was contended that a bankrupt had a constitutional right under the due process and equal protection clauses to a waiver of the $50 statutory filing fee payment required in federal court bank-

ruptcy proceedings as a condition to obtaining a discharge of his debts. However, *Kras* pointed out that, unlike divorce, the discharge of debts was in the area "of economic and social welfare," and does not involve a "fundamental interest," such as divorce.

*Ortwein v. Schwab, supra,* involved the validity of the state court's refusal to waive Oregon's regular $25 appellate court filing fee in an appeal from a reduction of Oregon's old-age assistance benefits ordered by the county welfare agency. The majority of the court followed *Kras* and found *Boddie* distinguishable. The court pointed out:

> In Kras we observed that one's interest in a bankruptcy discharge "does not rise to the same constitutional level" as one's inability to dissolve his marriage except through the courts. . . . In this case appellants seek increased welfare payments. This interest, like that of Kras, has far less constitutional significance than the interest of the Boddie appellants.

35 L. Ed. 2d at 575. With reference to the equal protection clause, the majority pointed out at page 576:

> Appellants urge that the filing fee violates the Equal Protection Clause by unconstitutionally discriminating against the poor. As in Kras, this litigation, which deals with welfare payments, "is in the area of economics and social welfare." . . . No suspect classification, such as race, nationality, or alienage, is present. . . . The applicable standard is that of rational justification.

The court thereupon held the purpose of the Oregon filing fee requirement was to produce "some small revenue to assist in offsetting" operating costs. "Appellants do not contend," the court said, "that the fee is disproportionate or that it is not an effective means to accomplish the State's goal. The requirement of rationality is met." 35 L. Ed. 2d at 576. The majority opinions in *Boddie, Kras* and *Ortwein* are binding upon us with regard to the due process and equal protection clauses of the United States Constitution. This is so notwithstanding the vigorous dissenting opinions of Justices Douglas, Brennan, Stewart, Marshall, and the dissent-

ing opinion of Justice Black in *Meltzer v. C. Buck LeCraw & Co., supra.*

■■ We must next determine whether article 1, sections 3 and 12 of the state constitution require a result similar to that reached in *Boddie, Kras* and *Ortwein.* The due process and equal protection clauses of the Fourteenth Amendment are substantially similar either in language or in purpose to article 1, sections 3 and 12 of the state constitution. *Olsen v. Delmore,* 48 Wn.2d 545, 295 P.2d 324 (1956); *Herr v. Schwager,* 145 Wash. 101, 258 P. 1039 (1927). Accordingly, the rationale of majority opinions in the decisions of the Supreme Court of the United States construing the Fourteenth Amendment, although not binding upon the state courts, are nevertheless accorded great weight. *Petstel, Inc. v. County of King,* 77 Wn.2d 144, 459 P.2d 937 (1969). We cannot say that the purposes of article 1, sections 3 and 12 of the state constitution are so far different from those of the Fourteenth Amendment that the rationale of *Boddie, Kras* and *Orwein* should not be followed. *Kras* and *Ortwein* refuse to recognize a constitutional right of access to the courts if the case is one "in the area of economics and social welfare." *Ortwein* holds that the equal protection clause of the Fourteenth Amendment does not invalidate its conclusion. If we are to give proper weight to *Boddie, Kras* and *Ortwein,* we must adopt the majority rationale. *Ashley v. Superior Court, supra,* is consistent with this view. In *Ashley* the court refused to waive prepayment of the sheriff's fees for service of process on behalf of an indigent seeking a divorce. Such a refusal is a holding that an indigent did not have a constitutional right to a waiver of such fees.

■ The next question is whether the trial court abused its discretion in refusing to require that defendant waive the fee and indemnity bond requirements with which all judgment creditors must comply before the defendant is required to execute a writ of execution. Whether a court should exercise its inherent power to waive statutory requirements as to an indigent in order to protect his

right of access to the courts is a matter that must be determined on a case-by-case basis. *See O'Connor v. Matzdorff*, 76 Wn.2d 589, 458 P.2d 154 (1969); *Ashley v. Superior Court*, 82 Wn.2d 188, 509 P.2d 751 (1973). The reasons for exercising such inherent power are not always necessarily the same. At the minimum there must be a showing (1) of actual, not theoretical, indigency; (2) that but for such waiver a litigant would be unable to maintain the action; (3) that there are no alternative means available for procuring the fees; and (4) that plaintiff's claim is "brought in good faith and with probable merit." *O'Connor v. Matzdorff, supra* at 606. The exercise of the court's inherent power is not limited to divorce cases. The power may be exercised, as in *O'Connor v. Matzdorff*, notwithstanding the case is one in the area of economics and social welfare. The court, in determining whether to exercise its inherent power, may properly consider not only the interests of the indigent, but the public interest and the interest of any other person or party that may be adversely affected by the exercise of such power.

The instant case illustrates the necessity of considering other interests as well as those of the indigent. When defendant, in performing the functions of a sheriff, undertakes to levy upon the property of a judgment debtor pursuant to the judgment creditor's request or direction, there is the possibility the judgment creditor may be mistaken in designating the property to be levied upon. The property may be exempt from execution, or it may not belong to the judgment debtor. If the sheriff levies upon such property, he will be liable for wrongful levy in an action by the owner for the recovery of possession of the property levied upon. He may also be held liable for damages for conversion. *Young v. Long*, 124 Wash. 460, 214 P. 821 (1923); *Interior Warehouse Co. v. Hays*, 91 Wash. 507, 158 P. 99 (1916); *Scott v. McGraw*, 3 Wash. 675, 29 P. 260 (1892). Accordingly, RCW 36.28.050 permits a sheriff to require "an indemnifying bond of the plaintiff in all cases where he has to take possession of personal property."

If the court exercises its inherent power to excuse an indigent from furnishing a sheriff's indemnity bond as required by RCW 36.28.050, the court for all practical purposes shifts fiscal responsibility for the indigent's mistakes from the indigent to the innocent sheriff. The sheriff, because of plaintiff's indigency, cannot receive reimbursement from the indigent of damages he sustained in making a wrongful levy. Furthermore, no legislative appropriation provides the innocent sheriff with a source of reimbursement. The trial court was not required to ignore the adverse fiscal consequences by ordering a waiver of the statutory fee and bond requirements. The case here for nonwaiver is even stronger than in *Ashley v. Superior Court, supra*. The court there refused to order a waiver of the sheriff's fees required for the service of process in a divorce case.

The trial court, having determined not to waive the indemnity bond requirement, could well have next determined that even with a waiver of statutory filing fees, such waiver would not enable the indigent plaintiff to obtain the execution of the writ. We cannot say that the trial court's discretion was "exercised upon a ground, or to an extent, clearly untenable or manifestly unreasonable." *Friedlander v. Friedlander*, 80 Wn.2d 293, 298, 494 P.2d 208 (1972).

It is within the power of the legislature to appropriate funds to pay filing fees and other costs for the benefit of indigents to protect their right of access to the courts, including their right to collect judgments. Until the legislature acts, courts must continue to exercise their inherent power to require a waiver of fees and costs on a case-by-case basis, taking into account the needs of both the indigent and all other interested persons who may be adversely affected by the waiver.

The judgment is affirmed.

FARRIS and JAMES, JJ., concur.