**Alice HIGHTOWER and Bertha Zuke, Petitioners,**

v.

**Roger F. PETERSON, Judge of the First Judicial District of Iowa In and For Black Hawk County, Respondent.**

No. 56853.

Supreme Court of Iowa.

Nov. 12, 1975.

R. James Sheerer, Waterloo, for petitioners.

Richard C. Turner, Atty. Gen., Lorna Lawhead Williams, Sp. Asst. Atty. Gen., Michael Murphy, Asst. Atty. Gen. and Robert L. Rausch, Asst. County Atty., for respondent.

MOORE, Chief Justice.

Petitioners brought this original certiorari proceeding to contest the legality of respondent's ruling which denied their requests to proceed in forma pauperis and for waiver of prepayment of requisite fees and costs in dissolution of marriage proceedings. We annul the writ.

The trial court granted permission to Alice Hightower, Martha Zuke and Mary Bascom to file their joint petition seeking waiver of fees and costs in their separate dissolution of marriage actions without payment of filing fee. Each sought to proceed in forma pauperis.

After hearing, at which all petitioners appeared and testified, respondent judge filed findings of fact, conclusions of law and a decree. The conclusions of law included recognition of the holding in *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113, which we will discuss infra. The decree granted only Mary Bascom the relief sought. Petitioners Hightower and Zuke were denied permission to commence and proceed with their respective dissolution actions in forma pauperis because respondent judge concluded they could afford to pay the requisite fees and costs.

On application of Hightower and Zuke, challenging the legality of the decree as it applied to them, we ordered issuance of a writ of certiorari. After filing of briefs, Zuke filed her "Motion to Dismiss Proceedings as to Bertha Zuke." She alleged she had borrowed money to pay the requisite fees and costs for her dissolution action and that she desired to withdraw from this action. We granted her motion. Thus we now have only the issues raised by petitioner Hightower.

Mrs. Hightower contends respondent's denial to proceed in forma pauperis in her dissolution of marriage action was an illegal act reviewable in this certiorari proceeding. She specifically argues respondent's finding of non-indigency was an illegal act because it was not supported by substantial evidence and because respondent applied an incorrect standard of indigency in denying her the relief sought.

■ I. The due process of law issue raised by the three plaintiffs in the lower court is not involved here in view of the lower court's following of the holding in *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113.

*Boddie* holds a state denies process of law to indigent persons by refusing to permit them to bring divorce actions except on payment of court fees and service-of-process costs.

In *Boddie*, however, there was no dispute as to inability of appellants to pay either the filing fee or costs for service of process. Indigency was considered as an established fact in deciding the motion to dismiss.

II. In this matter petitioner Hightower pleaded and rightfully assumed the burden of proving indigency and inability to pay the requisite $5 filing fee and estimated $22 cost of publication of notice to her husband.

Mrs. Hightower, 26 years of age at trial time, testified she had been separated from her husband for over five years and had no knowledge of his whereabouts. She is responsible for the support of her seven children, aged 11 months to 9 years, who reside with her. Her income consists of $394 per month from the Aid to Dependent Children program and wages of about $221 per month from her employment in a nursing home. She further testified her assets included $100 worth of wearing apparel, furniture, a television she had purchased shortly before trial and her $6000 home purchased on contract one year prior to trial.

Mrs. Hightower testified she owed $80 to an oil company, was behind on the house insurance and that she was able to pay only the interest portion of monthly television and furniture loan payments. She stated her monthly expenses totaling $617.68 were as follows:

| EXPENSES | MONTHLY |
|---|---|
| House payment | $113.00 |
| Food stamps | 130.00 |
| Clothing | 30.00 |
| Furniture payment | 29.00 |
| Fuel oil | 40.00 |
| Utilities (G&E) | 31.00 |
| Telephone | 13.00 |
| Transportation | 21.50 |
| Babysitting | 107.50 |
| Water & Sewer | 3.00 |
| House Insurance | 5.00 |
| Installment payments | 18.78 |
| Toiletries | 20.00 |
| Lunches (work, noon) | 12.90 |
| Uniforms and shoes | 5.00 |
| Termite control | 8.00 |
| Miscellaneous | 30.00 |

Mrs. Hightower further testified she never had any money left after paying her monthly expenses and she had not previously filed for divorce or dissolution because she was unable to pay the filing fee and publication of notice cost.

The findings of fact by respondent judge include:

"In this particular situation the court concludes that plaintiff, Alice Hightower has an item set forth in her budget which is captioned miscellaneous and as well has been able to borrow funds to purchase other items and, therefore, does have the means to budget for these expenses to gain access to the courts."

III. Respondent does not question the appropriateness of the certiorari action but rather asserts his finding of non-indigency is supported by substantial evidence and that he applied the correct standards of indigency. Thus the parties present two issues bearing on petitioner's claim respondent acted illegally.

The following from *State v. Cullison*, Iowa, 227 N.W.2d 121, 126, is relevant here:

"Certiorari is a remedy provided by rules 306 through 319, R.C.P. This is the source of our basic rule that relief by way of certiorari shall be strictly limited to questions of jurisdiction or illegality of the acts complained of, unless otherwise specially provided by statute. Rule 308, R.C.P.; *Wright v. Denato*, 178 N.W.2d 339, 340 (Iowa 1970); *Smith v. City of Fort Dodge*, 160 N.W.2d 492, 495 (Iowa 1968).

"Certiorari is not an equitable proceeding. The action is by ordinary proceedings, rule 317, R.C.P., which means it is a law action. *Staads v. Board of Trs. of Fireman's Ret. Pension Fund*, 159 N.W.2d 485, 489 (Iowa 1968). Consequently, our review ordinarily is not *de novo* and we do not review fact findings of the lower tribunal further than to ascertain if they are sustained by competent and substantial evidence. Rules 334, 344(f)(1), R.C.P.; *State v. District Court of Iowa, in and for Linn County*, 218 N.W.2d 641, 643 (Iowa 1974).

"We have reasoned there is an illegality within the meaning of rule 308, R.C.P., where there is not substantial evidence to support the findings on which the lower court or tribunal based its conclusions of law. *Steinbeck v. Iowa Dist. Ct. in and for Linn County*, 224 N.W.2d 469, 472 (Iowa 1974); *Reed v. Gaylord*, 216 N.W.2d 327, 334 (Iowa 1974).

"Where there is no factual dispute and no conflicting inferences may be drawn from the facts it is for us to review trial court's conclusions as a matter of law. *Sueppel v. Eads*, 261 Iowa 923, 926, 156 N.W.2d 115, 116 (1968). And in reviewing law issues, this court is not bound by trial court's ruling. *City of Burlington v. Citizens to Protect Our Freedoms*, 214 N.W.2d 139, 141 (Iowa 1974); *Frantz v. Knights of Columbus*, 205 N.W.2d 705, 708 (Iowa 1973).

"Exceptions to the above review rules have been carved out in at least two situations.

"The first situation arises when a certiorari action is brought to challenge a contempt judgment. * * *.

"The second situation occurs when issues of violation of basic constitutional safeguards are raised. Under principles

laid down in applicable federal and state decisions, such issues require an appellate court to make its own evaluation of the totality of the circumstances under which the ruling on those constitutional rights was made. [Citations]."

See also *State v. Dist. Ct. in and for Polk Cty.,* Iowa, 231 N.W.2d 1, 5.

Both briefs argue the substantial evidence scope of review. However, Hightower asserts violation of basic constitutional safeguards as above referred to in the second situation and therefore we make our own evaluation of the totality of the circumstances.

Considering the totality of the circumstances as shown by the entire record, including the trial transcript, we agree with the trial court's conclusion petitioner Hightower did not establish her right to the order sought.

■ IV. Petitioner also argues respondent judge utilized standards requiring proof of destitution rather than indigency. Apparently petitioner takes the position respondent did not apply the proper rule of law. It is well established illegality may be shown where the trial court has not applied the proper rule of law. *Reed v. Gaylord,* Iowa, 216 N.W.2d 327, 334; *Wonder Life Company v. Liddy,* Iowa, 207 N.W.2d 27, 31.

Only a very few cases since *Boddie* have faced head on the question of how to define "indigency" for the purpose of waiving fees and costs in a divorce proceeding. Reference to the annotation at 52 A.L.R.3d 844 will give an overview of the decisions cited and discussed by the parties. Two courts, California and Washington, were recently presented with the issue of how to approach the subject. California's long established use of affidavits for proof creates some conflict.

In *Earls v. Superior Court of San Luis Obispo County,* 6 Cal.3d 109, 98 Cal.Rptr. 302, 490 P.2d 814 the trial court had found the applicant for waiver of fees to be capable of setting aside $10 per month for 4–5 months in order to pay the fees and costs. After finding that the only way petitioner could have saved $10 per month would have involved violations of state and federal welfare laws, the California Supreme Court reversed the trial court and held that where the trial court finds the affidavit of indigency sufficient to make a prima facie showing of indigency, the petition must be granted unless the court has reason to question the truthfulness of allegations made in the affidavit. The court said that not only *must* the petition be granted, it must also be granted without unreasonable delay. In finding that 4–5 months was too long for an indigent to be required to "save up" for a divorce, the court reasoned:

"Indigents are entitled not merely to access to the courts but to timely access. They may not be subjected to unreasonable delays in securing fundamental rights solely by reason of their poverty." 98 Cal.Rptr. at 306, 490 P.2d at 818.

A few months later, the California court restated and expanded the *Earls* holding in *March v. Municipal Court for San Francisco J. D.,* 7 Cal.3d 422, 102 Cal.Rptr. 597, 498 P.2d 437. The discussion of indigency in *March* concluded:

"The relevant consideration in determining indigency is whether the petitioner's *current financial status* affords him equal access to the legal process. Such a determination cannot include an evaluation of the appellant's future earning potential or even his present potential had he chosen to employ himself in a more financially rewarding manner." 102 Cal. Rptr. at 602, 498 P.2d at 442.

The Washington Supreme Court case is *Ashley v. Superior Court in and for County of Pierce,* 82 Wash.2d 188, 509 P.2d 751. Recognizing the applicability of *Boddie v. Connecticut, supra,* the court enunciated guidelines for the trial court's exercise of discretion in ruling on applicant's petition for waiver of fees and costs in a divorce proceeding:

"In order for the court to waive the filing or appearance fee in a divorce action, however, the showing of poverty must be actual and not theoretical. To support the waiver of fees in forma pauperis, the applicant must make a clear showing to the court that, but for such waiver, the plaintiff would be unable to maintain the action for divorce, and that there are no alternative means available for procuring the fee. The plaintiff must show to the court's satisfaction that the indigency is genuine, the need for the divorce is real, the grounds are meritorious and neither frivolous nor transient, and the divorce action is brought without the connivance, concurrence or collusion of the defendant. Finally, it should be made to appear that the filing fees cannot be obtained from other sources nor taxed in advance upon the defendant spouse." 509 P.2d at 754, 755.

We feel the Washington approach is sound. It represents an analysis which combines fairness to the petitioner while preserving the integrity of the system by assuring that careful consideration will be given to each application. We do not, however, wish to adopt the entire holding of the Washington court as our own.

Because this is a case of first impression in Iowa, we have carefully considered the theories of other courts. For the same reason we are now able to adopt the approach which we deem advisable under the circumstances.

Iowa does not have a specific in forma pauperis statute. Waiver of fees and costs for indigents· seeking a divorce is accomplished through the inherent power of the trial court to waive such fees in the interest of justice. *Wymer v. Dagnillo,* Iowa, 162 N.W.2d 514, 519, and citations; *Bowman v. Waldt,* 9 Wash.App. 562, 513 P.2d 559, 562. The court may rule on the basis of affidavits submitted if requested by the parties, otherwise only after a formal hearing.

Because indigency is a subject which must be analyzed on a case by case basis, the determination of one's ability to pay must be lodged in the sound discretion of the trial court, subject to standards set by this court. In ruling on a petition for waiver of fees and costs, the trial court should consider the following:

1. Truly indigent persons are constitutionally entitled to timely access to our courts in dissolution proceedings. *Boddie v. Connecticut,* supra, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113.

2. The standard to be applied when determining the eligibility for waiver of fees and costs should be inability to pay or give security for the fees and costs without losing the ability to provide himself or herself with the basic necessities of life. One need not be destitute to qualify. *Adkins v. E. I. Dupont de Nemours & Co.,* 335 U.S. 331, 339, 93 L.Ed. 43, 49, 69 S.Ct. 85; *Harris v. Harris,* 137 U.S.App.D.C. 318, 424 F.2d 806. This standard is not unlike that found in section 336A.4, the Code:

"* * * unable [to retain counsel] without prejudicing his financial ability to provide economic necessities for himself or his family * * *."

3. In support of a petition for waiver of fees and costs, the applicant must make a clear showing that but for the waiver, the plaintiff would be unable to maintain the action for divorce and that there are no reasonable alternative means available for procuring the fee. Mere financial inconvenience will not be sufficient. See *Miserak v. Terrill,* 130 Vt. 7, 285 A.2d 753, 754; *Ashley v. Superior Court In & For County of Pierce,* 82 Wash.2d 188, 509 P.2d 751, 758.

4. The court must be satisfied that the indigency is genuine, and that the action is not the result of concurrence or collusion of the defendant to avoid payment of fees. See *State ex rel. McCalister v. Graham,* Okl., 531 P.2d 1367; *Ashley v. Superior Court In & For County of Pierce,* at page 755 of 509 P.2d.

■ 5. The court should be satisfied that the fees cannot be obtained from other sources or taxed in advance upon the defendant spouse.

■ 6. In determining ability to pay, the trial court should carefully consider a decision to deny relief on the grounds of the petitioner's perceived ability to accumulate the fees over a period of months, and should deny relief on that ground only where it is clear from the facts that such a ruling will not unreasonably delay the petitioner's access to the court. *Boddie v. Connecticut, supra,* 401 U.S. 371, 378, 91 S.Ct. 780, 28 L.Ed.2d 113, 119; *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62, 66.

■ 7. That an applicant has qualified for welfare assistance is not conclusive of eligibility for waiver of fees and costs in a divorce proceeding. However, that fact properly proved, should be considered together with all other evidence.

■ V. We now hold that in applying the above described standards to Judge Peterson's decision it does not appear the court acted illegally in denying relief to petitioner Hightower. We find it was not unreasonable for the court to conclude she could make arrangements to provide for the small amount of fees and costs involved without depriving her and her family of basic necessities of life. Respondent was aware of the requirements of timely access to the courts and considered this factor in reaching his conclusion.

The writ of certiorari is annulled.

MASON, LeGRAND, REES, UHLENHOPP, REYNOLDSON and HARRIS, JJ., concur.

McCORMICK and RAWLINGS, JJ., dissent.

McCORMICK, Justice (dissenting).

I agree this court has an obligation to make its own evaluation of the totality of the circumstances under which the challenged order was made in the present case. *State v. Thomas,* 205 N.W.2d 717, 721 (Iowa 1973).

As a result of that evaluation, I would find the trial court erred in refusing to permit plaintiff to maintain a dissolution action without prepayment of fees and costs.

The evidence on the issue of plaintiff's indigency consisted entirely of her testimony and affidavit. No claim was made nor does any evidence exist that she has any equity in the $6000 home she began to purchase in June 1972 upon which she was obligated to make $113 monthly payments. It does not take much exercise of imagination to picture the quality of dwelling she and her seven children occupy. Her monthly estimate of expenses does not include any amount for maintenance of this home. No suggestion is made that she could budget for filing fees and costs by reducing expenditures for housing.

Nor do I suppose she should be expected to give up her clothing, which she estimates has a value of $100.

Although much is made of the fact she "purchased" furniture including a television set at some point before trial, the record shows she obtained these items on credit. The purchase price was $600 or $700 and, after financing arrangements, she owed $1000 on them. The items purchased secure the debt. They are not assets. At trial time, she was unable to meet her principal payments on this debt. In addition she had other bills, including an $80 fuel oil bill, she was unable to pay. I do not understand how her expenditures for these items demonstrate a present ability to budget for payment of fees and costs. To me, they show she is unable to do so in her present financial condition.

Past profligacy, if it appears, is not relevant unless it tends to prove a present ability to pay. *March v. Municipal Court for San Francisco J. D.,* 7 Cal.3d 422, 102 Cal.Rptr. 597, 498 P.2d 437 (1972).

The trial court leaned heavily upon the fact one monthly expenditure of $30 was categorized "miscellaneous" and seem to have treated that item as a budget surplus. The evidence shows, instead, that plaintiff and her children consumed her entire income on a current basis and she was falling behind on her obligations.

The State already made a determination of her indigency in determining her eligibility for ADC. No suggestion is made that she is not entitled to those benefits. I am sure they are not intended to be sufficient to cover legal expenses; they give her no more than what the government can spare toward her subsistence.

I believe the majority, like the trial court, has somehow turned plaintiff's "cash flow" into an asset, ignoring the fact that her income is inadequate even to meet minimal necessities.

The majority does not say how its standards of indigency may reasonably support the trial court's order. Although the majority gives lip service to the principles that indigency must be judged based upon present financial condition, and that the person's financial ability to provide necessities for himself and his family are not to be prejudiced, the opinion is devoid of any explanation to show how this plaintiff's present financial condition warrants a conclusion she is able to pay dissolution filing fees and costs without prejudicing her ability to provide necessities for herself and her children.

We are told in *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113, 119 (1971), that the due process right of access to the courts must be granted at a meaningful time and in a meaningful manner. The majority opinion turns this principle inside out, saying, "(T)he trial court should carefully consider a decision to deny relief on the grounds of the petitioner's perceived ability to accumulate the fees over a period of months * * *." *Boddie* does not stop with requiring "careful consideration" of denial of relief on that basis; it flatly prohibits any unreasonable delay on that ground. *Earls v. Superior Court of San Luis Obispo County,* 6 Cal.3d 109, 98 Cal.Rptr. 302, 490 P.2d 814 (1971). The evidence in this case falls far short of showing plaintiff has a present financial ability to pay filing fees and costs to maintain a dissolution action.

I believe the trial court order denied plaintiff her constitutional right of access to the courts to maintain a dissolution action by preventing her from filing her action because she is poor.

I would sustain the writ.

RAWLINGS, J., joins in this dissent.